UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| M.M.C., On Her Own Behalf and On Behalf Of her Minor Children, M.C.C and A.T.C, and N.A.B, on His Own Behalf and On Behalf of His Minor Child, N.A.C. | ) ) ) ) | No. 23-CV-00158-WES-LDA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As discussed below, Congress has not waived sovereign immunity for the types of claims asserted in this action. As such, Plaintiffs' claims are jurisdictionally barred. In addition, Plaintiffs fail to state a claim upon which relief may be granted and the Complaint should be dismissed for this additional reason.

## I. OVERVIEW

Plaintiffs M.M.C. (on behalf of herself and her minor children, M.C.C. and A.T.C.) and N.A.B. (on behalf of himself and his minor child, N.A.C.) (together, "Plaintiffs") bring claims against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), seeking damages based on their detention and separation after crossing the United States-Mexico border. According to the Complaint, in 2018, M.M.C. and N.A.B and their children entered the United States without authorization. (Compl., ECF No. 1, ¶¶ 12-13, 83, 85, 124). The parents were detained for criminal proceedings related to their unlawful entry and, as a

result of their detention, were separated from their children.  Plaintiffs seek monetary damages for injuries allegedly caused by: (1) Defendant's implementation of then-existing policies to refer for prosecution and to prosecute all individuals suspected of illegally entering the United States at the United States-Mexico border, including parents with children ("Zero-Tolerance Policy"), and (2) the conditions of confinement and treatment of Plaintiffs after they were separated.

The current Administration has denounced the prior practice of separating children from their families at the United States-Mexico border and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy.  *Establishment of Interagency Task Force on the Reunification of Families*, Exec. Order 14011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021).  The Biden Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law."  *Id.*

While the United States recognizes that some district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy have reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, and although the United States does not defend the policy choices that led to family separations under the prior administration's policies, the United States respectfully submits that the better reading of the FTCA indicates that Congress has not waived sovereign immunity for claims such as these.

Plaintiffs' claims should be dismissed for multiple reasons.  First, Plaintiffs' claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which shields the United States from liability for discretionary decision-making relating to enforcement of federal criminal and immigration law.  Second, Plaintiffs' claims are barred by the FTCA's

exception for actions taken while reasonably executing law.  Third, there is no private person analogue for Plaintiffs' claims, as required for a waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because the claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement that are activities in which only the government, and not private parties, may engage.  Fourth, Plaintiffs fail to state a claim under Texas law upon which relief can be granted.  Finally, Plaintiff A.T.C.'s claims are barred because her administrative remedies were not exhausted and her claims are time-barred.

## II.     FACTUAL AND LEGAL BACKGROUND

### A.  Statutory Framework for Noncitizens Entering the United States[1]

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States.  8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  When a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325(a).  Violation of § 1325(a) is a misdemeanor punishable by a fine and imprisonment of up to six months for a first infraction.  *Id.*

A person arriving or present in the United States who is deemed inadmissible is also subject to removal from the United States and, as appropriate, detention pending the removal.  *See* 8 U.S.C. §§ 1225(b), 1226, 1357.  These provisions apply to both adults and children.  The government has statutory authority to "arrange for appropriate places of detention for aliens detained pending

---

[1] As recognized by the Supreme Court, "the term 'noncitizen' [i]s equivalent to the statutory term 'alien.' " *Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

removal or a decision on removal." *Id.* § 1231(g)(1).  In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody pending a decision on removal.  *See id.* § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii), (b)(4)(ii).

### B.  Statutory Framework for Immigration Custody of Unaccompanied Minors

Federal immigration law authorizes the government to provide for the custody of children who are present in the United States without lawful immigration status.  Specifically, the Office of Refugee Resettlement ("ORR") in the Department of Health and Human Services ("HHS") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term unaccompanied alien child ("UAC") is defined as a child who: (1) "has no lawful immigration status in the United States[;]" (2) "has not attained 18 years of age[;]" and (3) for whom "there is no parent or legal guardian in the United States" or "no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), any agency "shall transfer" a child to ORR's custody "not later than 72 hours after determining that such child is an unaccompanied alien child," absent exceptional circumstances.  8 U.S.C. § 1232(b)(3).  ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child."  *Id.* § 1232(c)(2)(A).  But ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).  Rather, once ORR takes custody, it must follow detailed statutory and regulatory provisions before releasing the child to an approved sponsor. 8 U.S.C. § 1232(c)(3).  Congress forbids transferring custody of a UAC "unless the Secretary of Health and Human Services makes a determination that the proposed custodian is

capable of providing for the child's physical and mental well-being" and this determination "shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id*. § 1232(c)(3)(A). In some instances, a home study is required. *Id*. § 1232(c)(3)(B).

### C. Flores Agreement Requirements

In 1996, the government entered into a settlement agreement referred to as the "*Flores* Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85-CV-4544 (C.D. Cal. Feb. 2, 2015) ("*Flores I*"). The *Flores* Agreement "sets out nationwide policy for the detention, release, and treatment of minors" in immigration authorities' custody. *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) ("*Flores II*") (citing *Flores* Agreement ¶ 9). According to the Ninth Circuit, the *Flores* Agreement "unambiguously" applies to both unaccompanied minors and minors who are encountered with their parents or guardians. *Id*. at 901. Under the Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id*. at 902-03 (quoting *Flores* Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward . . . releasing the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) ("*Flores III*") (quoting *Flores* Agreement ¶ 14).

Notably, the *Flores* Agreement applies only to minors. *Flores II*, 828 F.3d at 901. It does not address "the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id*. at 906; *see also United States v. Dominguez-Portillo*, No. 17-CV-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) (*Flores* "does not provide that parents are entitled to care for their children if they were simultaneously arrested by

immigration authorities"), aff'd sub nom. *United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019).  Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release.  *See Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-CV-16, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the *Flores* Agreement gives preference to the release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores II*, 828 F.3d at 908.

### D.  Executive Branch Directives Regarding Immigration Enforcement

On April 6, 2018, Attorney General Jefferson Sessions issued a memorandum that directed "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which prohibits unlawful entry into the United States ("the Zero-Tolerance Policy").  On May 4, 2018, DHS Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable, all adults who unlawfully crossed the Southwest border of the United States, including those initially arriving with minors ("the DHS Referral Policy").

Consistent with these directives, DHS began to refer for prosecution increased numbers of adults—including those traveling with children—who unlawfully entered the United States on the southwest border in violation of § 1325.  Children designated as UACs were transferred to ORR custody, as the TVPRA required.  *See* 8 U.S.C. § 1232(b)(3).

### E.  Detention, Separation, and Reunification of Plaintiffs

#### 1.  Plaintiff Family 1: M.M.C.,M.C.C., and A.T.C.

According to the Complaint,[2] on May 25, 2018, Plaintiffs M.C.C. and her mother, M.M.C., illegally crossed the United States-Mexico border into Texas thus committing a violation of 8 U.S.C. § 1325.  Compl. ¶¶ 83, 85, 93.  M.C.C. was six years old at the time of the crossing. *Id.* ¶ 113. According to the Complaint, after crossing into the United States, M.M.C. and M.C.C. were approached by Border Patrol Agents and detained. *Id.* ¶¶ 85, 93.  M.M.C. was charged with committing an 8 U.S.C. § 1325 offense, Entry without Inspection.  On May 26, 2018, M.M.C. was separated from M.C.C. and was transferred to criminal custody for her criminal proceedings at RGV Sector Centralized Processing Center ("RGV CPC") in McAllen, Texas.  *Id.* ¶ 93.  Since M.M.C. would no longer be able to provide care and physical custody of her child, M.C.C. was designated as a UAC and transferred to the custody of ORR pursuant to the TVPRA.  M.C.C. was placed in a residential facility in Pennsylvania. *Id.* ¶ 114.  M.M.C. was convicted of a violation of 8 U.S.C. § 1325(a)(1). *Id.* ¶ 93.  M.M.C. was transferred from RGV CPC to Port Isabel Detention Center ("PIDC") in Los Fresnos, Texas.  *Id.* ¶ 98.  During her detention, M.M.C. learned that she was pregnant with A.T.C. *Id.* ¶¶ 12, 121.  On July 17, 2018, M.M.C. and M.C.C. were reunited in Texas. *Id.* ¶ 192.  M.M.C., M.C.C., and A.T.C. now reside in Rhode Island. *Id.* ¶¶ 12, 117.

#### 2.  Plaintiff Family 2: N.A.B. and N.A.C.

On June 10, 2018, N.A.B. and his minor child, N.A.C., crossed the United States-Mexico border into Rio Grande, Texas after leaving Honduras. *Id.* ¶¶ 124, 126.  N.A.C. was six years old at the time. *Id.* ¶ 124.  They were transported to McAllen Border Patrol Station for processing.

---

[2] For purposes of this motion only, the facts alleged in the Complaint are assumed to be true. The government does not concede, and expressly reserves the right to dispute at the appropriate time, all facts alleged in the Complaint.

*Id.* ¶ 124.  On June 11, 2018, N.A.B. and N.A.C. were transported from McAllen Station to RGV CPC.  *Id.* ¶ 128.  On or about June 11, 2018, N.A.B. was separated from his son, N.A.C., as N.A.B. was subject to criminal prosecution pursuant to 8 U.S.C. § 1325.  *Id.* ¶ 129.  N.A.B. was charged and pled guilty to committing an 8 U.S.C. § 1325 offense.  *Id.* ¶ 134.  N.A.C. was transferred to ORR custody at Cayuga Centers in New York, an ORR grantee facility.  *Id.* ¶ 132.  N.A.B. was transported from RGV CPC to PIDC.  *Id.* ¶ 136.  On July 26, 2018, N.A.B. and N.A.C. were reunited.  *Id.* ¶ 144.  N.A.B. and N.A.C. now reside in Rhode Island.  *Id.* ¶ 12.

### F.  Plaintiffs' Complaint

Plaintiffs filed administrative claims under the FTCA against DHS on May 19, 2020 (M.M.C. and M.C.C.) and June 5, 2020 (N.A.B. and N.A.C.).  *See* Compl. ¶ 8.  Plaintiffs bring five counts: (1) intentional infliction of emotional distress ("IIED"); (2) abuse of process; (3) gross negligence; (4) negligence; and (5) abduction of a child.  Compl. ¶¶ 148-174.  Plaintiffs allege these harms stemmed from (1) the referrals of M.M.C. and N.A.B. for prosecution under the Zero-Tolerance Policy, which resulted in their separation from their children, and (2) the conditions of confinement and treatment of Plaintiffs.

### G.  Subsequent Policy Changes

On February 2, 2021, after assuming office, President Biden issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect[ing] family unity and ensur[ing] that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law."  *Family Reunification Task Force EO 14011*, § 1, 86 Fed. Reg. 8273, 8273. That Order created a Task Force to identify and reunify families separated under the Zero-

Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental health services to those separated families. *Id.* § 4; *see also Interim Progress Report, Interagency Task Force on the Reunification of Families*, Nov. 29, 2021.[3]

### III.  LEGAL STANDARDS

#### A.  Dismissal for Lack of Subject Matter Jurisdiction

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Courts must consider the threshold issue of jurisdiction before addressing the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke that jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996) ("It is the plaintiff's burden to prove the existence of subject matter jurisdiction.").

A Rule 12(b)(1) jurisdictional attack may be facial or factual.  *Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007).  The Court may dismiss an action under Rule 12(b)(1) if the complaint does not allege facts sufficient to establish subject matter jurisdiction on its face.  *Id.*  Because "[f]ederal courts . . . have only that power that is authorized by Article III of the Constitution and the statutes enacted by Congress[,]" *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted), the Court presumes the action lies outside its limited jurisdiction, and the burden is on the party asserting jurisdiction to establish that it exists. *Kokkonen,* 511 U.S. at 377.

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "Sovereign immunity

---

[3] Available at https://www.dhs.gov/sites/default/files/publications/21_1129_s1_ interim-progress-report-family-reunification-task-force.pdf.

is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Id.* at 475.

### B. Dismissal for Failure to State a Claim

Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim. To survive dismissal, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level" and must be sufficient to "state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

A court ruling on a motion to dismiss may rely on documents incorporated into the complaint by reference and on matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This category of documents may be considered without converting the motion to one for summary judgment, and includes documents annexed to the complaint, as well as documents referenced in, or integral to, the pleading. *In re Colonial Mort. Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 15-16 (1st Cir. 2003); *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (internal citations omitted).

## ARGUMENT

## IV.  THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS

Plaintiffs' claims should be dismissed for lack of jurisdiction.  The government does not defend the merits of the policies at issue in this case.  However, this case does not concern the wisdom of those now-revoked policies.  Instead, it is suit for damages under the FTCA.  Plaintiffs cannot prevail on their FTCA claims because Congress has not waived sovereign immunity for this kind of suit.

### A.  Plaintiffs' Claims Are Barred By The Discretionary Function Exception

#### 1.  Legal Standard for Discretionary Function Exception

The FTCA provides "a limited congressional waiver of the sovereign immunity of the United States."  *Soto-Cintron on behalf of A.S.M. v. United States*, 901 F.3d 29, 33 (1st Cir. 2018) (quoting *Díaz-Nieves v. United States*, 858 F.3d 678, 683 (1st Cir. 2017)); *Escalera-Salgado v. United States*, 911 F.3d 38, 40 (1st Cir. 2018).  The statute allows individuals to sue the United States where a federal employee's conduct, within the scope of his or her employment, causes "injury, loss of property, or personal injury or death."  *See* 28 U.S.C. § 1346(b)(1).  However, the FTCA's waiver of sovereign immunity is subject to exceptions.  *See* 28 U.S.C. § 2680.

When an exception applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed.  *See Muniz-Rivera v. United States*, 326 F.3d 8, 12 (1st Cir. 2003).  One such exception, the "discretionary function exception" ("DFE"), bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *United States v. Gaubert*, 499 U.S. at 328-32; *Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 8 (1st Cir. 2002)). Courts must first ask whether the challenged conduct was in fact "discretionary in nature" – that is, whether the conduct involved "an element of judgment or choice.' " *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *Limone v. United States,* 579 F.3d 79, 101 (1st Cir. 2009). The first prong is met unless "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *Sanchez ex rel. D.R.S. v. United States,* 671 F.3d 86, 93 (1st Cir. 2012). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the defendant's acts or failures to act are presumed to be discretionary. *See Sanchez,* 671 F.3d at 93. Finally, the applicable policies and authorities must be considered in context – "the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Lam v. United States*, 979 F.3d 665, 677 (9th Cir. 2020).

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. Recognizing that tort actions challenging the government's discretionary policy judgments could "seriously handicap efficient government operations," Congress incorporated the DFE into the FTCA to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy" through a tort action. *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

The focus of this inquiry is whether the "nature of the actions taken," pursuant to an exercise of discretion, "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

The government need not prove that it considered these factors and made a conscious decision on the basis of them. *See Sanchez,* 671 F.3d at 93 (citing *Shansky v. United States,* 164 F.3d 688, 692 (1st Cir. 1999)). Indeed, under the second prong, the government actors' subjective intent is immaterial: "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *Hajdusek v. United States*, 895 F.3d 146, 150 (1st Cir. 2018) (subjective intent not relevant to application of the DFE). Moreover, "when established government policy allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when he exercises that discretion." *Hajdusek,* 895 F.3d 146, 150 (1st Cir. 2018) (citing *Gaubert*, 499 U.S. at 324). The statutory text confirms that the exception applies "whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). Finally, the fact that a policy is later rescinded, as here, does not alter the DFE analysis. As the D.C. Circuit explained in *Loughlin v. United States*, 393 F.3d 155, 166 (D.C. Cir. 2004), when the government discards a previous policy decision, "[t]he earlier judgment was no less a matter of policy because the later judgment was arguably better informed."

If both prongs of the *Gaubert* test are met, the DFE applies, the United States retains sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. This result applies even where the government may have been negligent in the performance of such discretionary acts, as "the presence or absence of negligence is irrelevant to the applicability of the discretionary function exception." *Evans v. United States*, 876 F.3d 375, 381 (1st Cir. 2017). As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity

was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

### 2. The Decisions To Prosecute M.M.C. And N.A.B. Were Discretionary In Nature And Subject To Policy Analysis

Plaintiffs' claims based on the decision to prosecute M.M.C. and N.A.B. and detain them for prosecution, which resulted in their separation from their children, are barred by the DFE because these decisions involved an element of judgment or choice and were susceptible to policy analysis. Plaintiffs do not contest that CBP lawfully apprehended them after they crossed the United States-Mexico border. Nor do Plaintiffs allege that M.M.C. and N.A.B. were improperly the subjects of prosecution, or that the government lacked discretion to prosecute them. Moreover, Plaintiffs do not dispute that the government had the discretion to detain M.M.C. and N.A.B. in connection with their criminal proceedings.

These decisions, which together resulted in M.C.C. and N.A.C.'s placement in the care and custody of ORR, are quintessentially discretionary. As the Supreme Court has stated, "the Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.' " *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Thus, "[d]ecisions concerning when, whether and whom to prosecute have traditionally been considered discretionary and have been held to fall within the discretionary function exception of 28 U.S.C. § 2680(a)." *KW Thompson Tool v. United States*, 836 F.2d 721, 729 (1st Cir. 1988) ("All the components of the final determination—whether, when, whom and how—reflect the decision-maker's judgment of

how best to enforce compliance and to deter misconduct in others.  We would be engaging in judicial 'second guessing,' as well as trespassing upon an executive function, were we to interfere with the prosecutorial decision-making process.").

These discretionary decisions are also the type of judgment the DFE was designed to shield. As other courts have recognized, the Zero-Tolerance Policy, which was subsequently revoked, "amounts to the exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No. 18-CV-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D. Tex. 2020).  Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 490 (1999).  The DFE bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536; *Varig*, 467 U.S. at 814.  In determining the applicability of the DFE, the Court looks only at whether the conduct or decision at issue is "susceptible to policy analysis" from an objective perspective; subjective intent is not part of the inquiry. *Gaubert*, 499 U.S. at 325.  Here, however, the government's decisions were not merely "susceptible" to policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives.

In *Peña Arita*, 470 F. Supp. 3d 663, the court dismissed FTCA claims similarly arising from the Zero-Tolerance Policy.  As here, the plaintiffs alleged that the practices at issue were unlawful and challenged various associated conditions of confinement.  *Id*. at 686-87. In dismissing the claims, the *Peña Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary." *Id.* at 687

("prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception."); *see also S.E.B.M. by & through Felipe v. United States*, No. 21-CV-00095, 2023 WL 2383784, at *14 (D.N.M. Mar. 6, 2023). The court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id.* (quoting *Gaubert*, 499 U.S. at 323). The *Peña Arita* court held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of care actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred." *Id.* at 688.

### 3.  The Decisions To Detain M.M.C. And N.A.B. Pending Their Immigration Proceedings Were Discretionary In Nature And Subject To Policy Analysis

Following their criminal proceedings, M.M.C. and N.A.B. were transferred to secure adult immigration facilities pending their immigration proceedings. During that time, they were detained pursuant to 8 U.S.C. § 1225(b) in adult detention facilities. The decisions concerning where to detain M.C.C. and N.A.B. pending removal were also discretionary and susceptible to policy analysis. *See Santa-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions . . . must be viewed as falling within the discretionary function exception to the FTCA"). The federal government possesses the express statutory authority to "arrange for appropriate places of detention for [noncitizens] detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[4] "Congress has placed the responsibility of determining where

_____

[4] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. See *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

[noncitizens] are detained within the discretion of the [Secretary]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986); *see also Gandarillas-Zambrana v. Bd. Of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of [a noncitizen] in deportation proceedings . . . and therefore, to transfer [noncitizens] from one detention center to another."); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer [noncitizens] from one locale to another, as she deems appropriate, arises from" statute); *Sasso v. Mihollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention).

This discretion necessarily entails decisions about whether adults and minors can be detained together. *See Peña Arita*, 470 F. Supp. 3d at 691-92 (decisions by DHS to separate family members are protected by the DFE); *Ms. L. v. U.S. Immigration and Customs Enf't*, 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2020) ("parents and children may lawfully be separated when the parent is placed in criminal custody"). Although the *Flores* Agreement contains some requirements concerning the detention of minors, it does not prescribe a specific "course of action" and thus does not remove the government's discretion. Moreover, the *Flores* Agreement does not require release of a parent or mandate that parents be housed with their children. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *6; *Bunikyte v. Chertoff*, Nos. 07-CV-164, *et seq.*, 2007 WL 1074070, at *16 (W.D. Tex. April 9, 2007). In this case, none of the "mandatory" duties Plaintiffs allege government officials violated (*see* Compl. ¶¶ 19-21) prescribe a specific course of action to follow in connection with the prosecution and subsequent separate detention of the Plaintiff parents and children in this case. Instead, the challenged decisions were the result of the exercise of discretion. Accordingly, the exercise of the statutory authority regarding whether

17

to prosecute and where to detain M.M.C. and N.A.B. during and after their criminal proceedings is protected by the discretionary function exception.

### 4. The Determinations That M.C.C. And N.A.C. Were "Unaccompanied" Were Discretionary In Nature And Subject To Policy Analysis

For similar reasons, the determination that M.C.C. and N.A.C. were "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE.  *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy determination vested in federal officials.  *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied minor children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("interpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA"); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (determining whether conduct constituted "crime of moral turpitude" under applicable statute was "a quintessential exercise of [agency's] broad discretion").  Here, M.M.C. and N.A.C. were prosecuted and then transferred to adult immigration detention facilities. In those circumstances, the DFE protects the officials' determination that M.C.C. and N.A.C. should have been deemed unaccompanied and thus transferred to the custody of the ORR.  *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data").

**5.  Plaintiffs' Remaining Claims Concerning Their Conditions Of Confinement Are Barred By The Discretionary Function Exception**

To the extent that Plaintiffs challenge the conditions of their confinement, including the temperature, overcrowded conditions while in detention, as well as the frequency of communications after being separated (*see, e.g.*, Compl. ¶¶ 85-88, 94-96, 101, 104, 110, 126-27, 133-34, 137, 140-41), those claims are also barred by the DFE.  Courts have repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the DFE because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations.  *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (DFE applied to decision to transfer prisoner); *Antonelli v. Crow*, No. 08-CV-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by the DFE); *Lineberry v. United States*, No. 08-CV-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (detained individuals have "no right to unlimited telephone use" and a detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests"); *Harrison v. Fed. Bureau of Prisons,* 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

**B. Plaintiffs' Claims Relating to The Transfer of M.C.C. and N.A.C. to the Custody of ORR are Barred by the FTCA's Exception For Actions Taken While Reasonably Executing Law**

Plaintiffs' claims based on the decision to transfer M.C.C. and N.A.C. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations' " barred by §2680(a)).

This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation – even if that statute or regulation is later found unconstitutional or invalid – the due care exception applies and the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160-61 & n.5 (1st Cir. 1987) (exception barred claim of owner that FBI destroyed its prototype by dismantling

it during criminal investigation conducted pursuant to 28 U.S.C. § 533, which authorizes Attorney General to appoint officials "to detect and prosecute crimes against United States").

Here, the United States is required to "transfer the custody" of UACs to the care of ORR "not later than 72 hours after" determining that there is no parent available in the United States to provide care and physical custody, absent exceptional circumstances.  8 U.S.C. § 1232(b)(3).  In this case, according to the Complaint, the government made the determination that there were no parents available to provide care and physical custody for M.C.C. and N.A.C. because the government had referred M.M.C. and N.A.B. for criminal prosecution and placed them in secure immigration detention.  Once those protected discretionary determinations had been made, the TVPRA required that M.C.C. and N.A.B. be transferred to ORR custody.  The enforcement of that statutory command cannot form the basis of an FTCA claim.[5]

### C.  Plaintiffs' Claims Are Barred Because There Is No Private Person Analogue And Systemic Tort Claims Are Impermissible Under the FTCA

All of Plaintiffs' claims are also barred because the government acts that Plaintiffs challenge have no private person analogue.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action

---

[5] In reaching the contrary conclusion, certain district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *see also C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020).  But, as described, federal law does require that children be placed into ORR custody if their parents are unavailable to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution is a quintessentially discretionary one.

of the type that private persons could not engage in and hence could not be liable under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotations omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that would support a claim under the FTCA. The alleged harms here stem from the federal government's decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold parents in custody pending immigration proceedings or prosecution, resulting in their children's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as the decisions have no private-person counterpart. *See, e.g., Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration

status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-CV-00867, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (in matters relating to naturalization of noncitizens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law").

In addition, the FTCA's limited waiver of sovereign immunity only allows a plaintiff to sue the United States for damages arising from certain torts committed by specific federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)). As the Ninth Circuit has held, the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability under the FTCA. *See, e.g., Lee v. United States*, No. CV 19-08051, 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

Here, Plaintiffs seek to raise systemic tort claims against the United States. Throughout the Complaint, Plaintiffs attribute the alleged tortious conduct to the government as a whole, rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability. The FTCA's limited waiver of sovereign immunity does not encompass

such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6.

## V.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER TEXAS LAW

To the extent that the Court exercises jurisdiction over one or more of Plaintiffs' claims, their claims should be dismissed for failure to state a claim upon which relief may be granted. Plaintiffs' claims fail to meet the Rule 12(b)(6) pleading standard and must be dismissed for two reasons: (1) the detention and separation decisions Plaintiffs challenge are privileged under state law; and (2) Plaintiffs have failed to state a claim under state law for certain claims they have alleged, including negligence, gross negligence, and abduction of a child.

### A.  Choice-Of-Law Standard

Plaintiffs' claims are governed by Texas law.  The applicable law in an FTCA action is the law of the state where the alleged tortious act or omission occurred.  *See* 28 U.S.C. § 1346(b); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 705-06 (2004) (citing *Richards v. United States*, 369 U.S. 1, 11-12 (1962) ("The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of the place of injury to the substantive rights of the parties" (footnote omitted)). "The 'law of the place' provides the substantive rules to be used in deciding FTCA actions . . . The phrase 'law of the place' refers to the law of the state in which the allegedly tortious acts or omissions occurred." *Bolduc v. United States,* 402 F.3d 50, 56 (1st Cir. 2005); *Scanlon v. Dep't of the Army*, 277 F.3d 598, 600 (1st Cir. 2002) ("Liability under the Federal Tort Claims Act is determined in accordance with the law of the place where the act or omission occurred.").

The same result obtains even if the Court were to apply the law of Rhode Island.  Under the choice-of-law rules of Rhode Island, Texas law applies in this case.  *See Baker v. St. Paul Travelers Ins. Co.*, 595 F.3d 391, 392 (1st Cir. 2010).  For tort-based claims, Rhode Island uses an

interest-weighing approach to determine which jurisdiction has the "most significant relationship to the events and the parties." *Alifax Holding SpA v. Alcor Sci. Inc.*, 357 F. Supp. 3d 147, 155 (D.R.I. 2019) (cleaned up). To determine choice of law in a negligence action, Rhode Island law looks to four factors: (1) where the injury took place; (2) where the conduct causing the injury occurred; (3) the domicile or residence of the litigants; and (4) where the relationship between the litigants is centered. *Toledo v. Van Waters & Roger, Inc.*, 92 F. Supp. 2d 44, 49 (D.R.I. 2000). In this case, Plaintiffs (with the exception of A.T.C., who was born in the United States) crossed the United States-Mexico border into Texas, they were originally detained in Texas, the separation of N.A.C. and M.C.C. from their parents occurred in Texas, M.M.C. and N.A.C. were detained in Texas until they were reunited with their children, and the claims regarding the conditions of confinement concerned the facilities in Texas. Accordingly, Texas law should apply.

## B. The United States' Conduct Is Privileged

The conduct Plaintiffs challenge here is privileged under Texas state law and federal immigration statutes. Actions that may otherwise subject a person to liability are not considered tortious if the conduct is privileged. *See Hinojosa v. City of Terrell*, Tex., 834 F.2d 1223, 1231 (5th Cir. 1988) (citing Restatement (Second) of Torts § 10, and W. Keeton, Prosser and Keeton on Torts 16 (5th ed. 1984)). This principle applies here because the challenged conduct—the separation of M.M.C. and N.A.B. from their children as a result of their prosecution and imprisonment—was privileged under Texas law and federal immigration statutes.

It is well established that in FTCA cases, the United States is entitled to invoke state law privileges. *See Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (Texas's civil privilege defense statute applied in FTCA action alleging assault by federal officer); *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994) ("the United States may invoke any defenses available

to individual law enforcement officers under Texas law."); *Hernandez v. United States*, No. 17-CV-00087, 2018 WL 4103015, at *3-4 (S.D. Tex. July 2, 2018) ("the Government may look to state law privileges as a defense to FTCA claims").  Actions that may otherwise subject a defendant to liability are not tortious if the conduct is privileged.  *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988).  Privileges that apply to public officials performing their official functions with legal authority apply equally in FTCA cases.  *Tovar v. United States*, No. 98-CV-1682, 2000 WL 425170, at *6-7 (N.D. Tex. Apr. 18, 2000) (dismissing false imprisonment claim and finding that, because federal immigration statutes authorized the challenged conduct, the government's conduct was privileged), *aff'd*, 244 F.3d 135 (5th Cir. 2000); *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) (finding no FTCA liability because Texas's "civil privilege defense" protects officers who use force when they reasonably believe force is necessary, and finding no liability for false imprisonment because Texas's definition of false imprisonment excludes conduct undertaken under authority of law and a federal statute permitted the actions in question); *Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) (same); *Garza v. United States*, 881 F. Supp. 1103 (S.D. Tex. 1995) (alleged assault was privileged because the federal agents were enforcing federal immigration law).

In this context, Border Patrol and ICE agents engaged in privileged conduct while enforcing existing federal criminal and immigration statutory authorities.  *See* Restatement (Second) of Torts § 46, comment g (conduct is privileged when the actor "insist[s] upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress"); *see also Caban v. United States* 728 F.2d 68 (2d Cir. 1984) (false imprisonment claim was not actionable because INS's detention of plaintiff pursuant to federal statutory authority was privileged).  Here, the challenged conduct, the separation of Plaintiffs, was

a direct result of the criminal referral process for M.M.C. and N.A.B. and their subsequent detention for immigration proceedings. This law enforcement conduct was carried out pursuant to federal statutory authority. Accordingly, the conduct was privileged, and the United States cannot be held liable. *See S.E.B.M. v. United States*, No. 21-CV-00095, 2023 WL 2383784, *19 (D.N.M. March 6, 2023) (where government separated minor child from parent, the government's actions "were protected by its privilege to prosecute").

### C. Plaintiffs Fail to State A Claim for Negligence and Gross Negligence

In their third and fourth causes of action, Plaintiffs allege federal officials acted negligently by separating Plaintiffs, failing to ensure the conditions of confinement met "minimum living standards," and failing to provide medical care. Compl. ¶ 169. Plaintiffs do not specify the "substantial damages" allegedly suffered as a result of these alleged actions in their negligence claims, but elsewhere in the Complaint they allege that their separation caused Plaintiffs mental and emotional harm. *Id.*; *see also* ¶¶ 105-07, 119, 122, 145-46. These claims should be dismissed because (1) Texas does not recognize a cause of action for negligent infliction of emotional distress, and (2) Plaintiffs have not identified a duty under state law not to separate them.

"Texas does not recognize an independent cause of action for negligent infliction of emotional distress . . . ." *Garza*, 881 F. Supp. at 1108. But Plaintiffs' claim is in essence a claim for negligent infliction of emotional distress, because they do not allege that they suffered any physical harm as a result of the United States' negligence. *See* Compl. ¶¶ 105-07, 119, 122, 145-46.[6] Thus, any alleged damages they suffered must be attributable to emotional harm. Because the damages Plaintiffs allege are emotional in nature, "[t]he layering of this general negligence charge on top of the specific claims . . . sounds suspiciously like an impermissible claim for

---

[6] The only "physical harm" alleged is to plaintiff A.T.C. (*see* Compl. ¶ 164), whose individual claims are all subject to dismissal for the reasons explained in Part VI.

negligent infliction of emotional distress," and should be dismissed. *Garza,* 881 F. Supp. at 1106 (dismissing plaintiffs' claims for negligent infliction of emotional distress and negligence, among others).

Even if the negligence and gross negligence claims are not dismissed as improper negligent infliction of emotional distress claims, they should still be dismissed for failure to identify an applicable duty under Texas law insofar as they are based on Plaintiffs' separation.  To maintain a negligence claim under Texas law, a plaintiff must show "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach."  *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *see also Tripp v. United States*, 257 F. Supp. 2d 37, 45 (D.D.C. 2003) ("Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA."); *Grost v. United States*, No. EP-13-CV-158-KC, 2014 U.S. Dist. LEXIS 61608, at *59 (W.D. Tex. May 4, 2014) (holding that Plaintiff failed to state a claim for negligence because Texas did not recognize a duty not to allow a hostile work environment).  This is true even if the Court finds that a sufficient private-person analogue exists for Plaintiffs' claims.  *See, e.g., Tripp*, 257 F. Supp. 2d at 45.[7]  The existence of a duty is a threshold question of law.  *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998); *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995).

---

[7] In *Tripp*, the court concluded as part of its analysis that the challenged conduct— the release of information contained on an employment-related form—had an analogous counterpart in the private sector. *Id.* at 45. The court still dismissed the plaintiff's negligence claim under Rule 12(b)(6), however, because the plaintiff could not establish a duty under the law of the District of Columbia to keep employee records, such as security clearance application forms, confidential. *Id.* at 45–48 ("Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA.").

Plaintiffs have not identified any duty under Texas law requiring the government to keep them together, because they cannot do so.  Indeed, Texas law recognizes no such duty.  *Rathod v. Barr*, No. 1:20-cv-161, 2020 WL 1492790, at *5 (W.D. La. Mar. 5, 2020) (in habeas matter, noting that a noncitizen "does not have a right to be housed in any particular facility, nor does this court have the authority to order ICE to house [a noncitizen] in any particular facility"); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (denying mandamus and holding that government has "no clear duty—nor, indeed, any duty" to transfer plaintiff to facility near his wife). Accordingly, their negligence and gross negligence claims should be dismissed.

### D.  Plaintiffs Fail to State A Claim For Abduction of A Child

Finally, the court should dismiss Plaintiffs' claim for "abduction of a child" (Count V). Plaintiffs' wrongful child abduction claim should be dismissed because Plaintiffs fail to allege a claim for wrongful child abduction that is recognized under Texas state law.  The Texas common law tort for child abduction is codified as "Parental Liability – Civil Liability for Interference with Possessory Interest in Child" in the Texas Family Code.  However, the statute itself and the post and pre-statutory case law on child abduction claims make it clear that this tort applies only when a person (usually a relative) violates a prior parental or custody *order* from a court.

For example, the statute provides that "[a] person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a possessory right of another person may be liable for damages to that person."  Tex. Fam. Code § 42.002(a).  And "possessory right" is defined as "a court-ordered right of possession of or access to a child, including conservatorship, custody, and visitation." Tex. Fam. Code § 42.001(2).  "Order" is defined as "a temporary or final order of the court of this state or another state or nation."  Tex. Fam. Code § 42.001(1); *see also Finley v. May*, No. 07-17-233-CV, 2017 WL 5763076, at *3 (Tex. App., Nov. 28, 2017)

(explaining that possessory rights were "those rights dictated in a court order"); *Hardy v. Mitchell*, 195 S.W.3d 862, 864-65 (Tex. App. – Dallas 2006) (holding that claim cannot be characterized as a claim for interference with a possessory right under chapter 42 of the Texas Family Code because the child was not the subject of any court order). And to the extent Plaintiffs rely on a non-statutory common law claim of wrongful child abduction, cases similarly limit those claims to circumstances where custody or other court orders were violated. *See, e.g.*, *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986) (recognizing a common law actionable tort "for child abduction in violation of a *custody order*") (emphasis added). The government is not aware of any Texas case where the common law application of wrongful abduction applies outside the context of an alleged violation of a court order.

Here, Plaintiffs do not allege facts sufficient to plead wrongful child abduction in violation of a custody order or other order from a court of law. Accordingly, their wrongful child abduction claim should be dismissed.

## VI.   THIS COURT SHOULD DISMISS THE CLAIMS BROUGHT ON BEHALF OF A.T.C. FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND BECAUSE THEY ARE TIME-BARRED

The Complaint includes claims brought by M.M.C. on behalf of her daughter, A.T.C. Compl. ¶¶ 160-170. These claims fail for the additional reason that no administrative claim was tendered on behalf of A.T.C., and therefore the claims on behalf of A.T.C. were not properly presented to the government. Moreover, because no administrative claim for A.T.C. was submitted within two years of the alleged events, A.T.C.'s claims are barred by the FTCA's statute of limitations.[8] Accordingly, the Court should dismiss Plaintiff A.T.C.'s claims.

---

[8] Claims that fail to meet the FTCA's administrative exhaustion requirements are properly dismissed under Fed. R. Civ. P. 12(b)(6). *See Morales-Melecio v. United States (Dep't of Health and Human Servs.)*, 890 F.3d 361, 367 (1st Cir. 2018) (explaining that motions to dismiss based

### A.  Claims on Behalf of A.T.C. Were Not Administratively Exhausted

The FTCA "contains an exhaustion requirement, which has been viewed as a non-waivable jurisdictional requirement limiting the suit to claims fairly made to the agency."  *Acosta v. U.S. Marshals Service*, 445 F.3d 509, 513 (1st Cir. 2006) (citation omitted)).  Specifically, "'[a]n action shall not be instituted upon a claim against the United States' unless the claimant first presents the claim to the appropriate Federal agency and the claim is finally denied."  *Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28, 37 (1st Cir. 2006) (quoting 28 U.S.C. § 2675(a)).  Courts have held that each plaintiff must independently satisfy this requirement in order to bring her FTCA claims in court even where they are based on a derivative injury suffered by a person who has filed an administrative claim.  *See, e.g.*, *Collazo v. United States*, 372 F. Supp. 61, 62 (D.P.R. 1973); *see also Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) ("The FTCA requires that each claim and each claimant meet the prerequisites for maintaining a suit against the government.  Thus, in multiple claimant actions under the FTCA, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim."); *Tirado-Maldonado v. United States* (D.P.R. Nov. 20, 2013) (each claimant is required to "individually satisfy the jurisdictional prerequisite of filing a proper claim . . .").

---

on the FTCA's statute of limitations should now be brought under Rule 12(b)(6) or Rule 56). This is because the FTCA's statute of limitations is now considered non-jurisdictional, and is subject to equitable tolling. *See United States v. Wong*, 575 U.S. 402, 420 (2015). A court may equitably toll the statute of limitations "when a party has pursued its rights diligently but some extraordinary circumstance prevents it from meeting a deadline." *Ortiz-Rivera v. United States*, 891 F.3d 20, 25 (1st Cir. 2018) (internal quotation marks and citation omitted).  "[T]he party seeking tolling has the burden of establishing that there is a basis for doing so," and the court has the "discretion to decide whether that burden has been met." *Id.* at 25.

No administrative claim has ever been filed on behalf of plaintiff A.T.C.[9]  According to the Complaint, A.T.C.'s alleged injuries occurred during M.M.C.'s pregnancy and when A.T.C. was born in February 2019.  Compl. ¶¶ 120-121.  However, no administrative claim (such as a Standard Form 95 Claim for Damage, Injury, or Death ("SF 95")) was filed on behalf of A.T.C., and the administrative claim filed by plaintiff's mother, M.M.C., and on behalf of M.C.C., do not include any claims on behalf of A.T.C.  (*See* Ex. A, Letter dated May 19, 2022, from Ropes & Gray to DHS, USCIS, CBP, HHS, DOJ).  More specifically, counsel for M.M.C. and M.C.C. (A.T.C.'s sibling) sent a letter to several federal agencies on May 19, 2020 with the subject line "Re: Claims for Damages under the Federal Tort Claims Act – [M.M.C.], on behalf of herself and her minor child, [M.C.C.][.]" (*See* Ex. A at 2).  The letter informed the government that:

> Ropes & Gray LLP represents [M.M.C.] and her minor child, [M.C.C.] ('Claimants') Enclosed please find administrative claims we are filing on their behalf under the Federal Tort Claims Act. The claims filing consists of: (1) a Claim Authorization Form; (2)-(3) a Standard Form 95 for each Claimant; and (4) an Attachment to the Standard Form 95s detailing the basis of their claims.

(*Id.*)  The letter alleges a violation of M.M.C. and "her *daughter's* rights" by detaining them in separate facilities.  (*Id.*) (emphasis added).  The letter further alleges that "[M.M.C.] and her minor child, [M.C.C.], were severely traumatized by their separation and prolonged detention . . . " (*Id.*) Furthermore, [M.M.C.] and *her daughter* have suffered prolonged and ongoing emotional harm from the day they were detained and separated on or around May 25, 2018, and both continue to experience emotional suffering due to this experience." (*Id.* at 2) (emphasis added).  At no point does the letter mention A.T.C. or any child of M.M.C. other than M.C.C.  (*See id.* at 1-3).

---

[9] The administrative claims of M.M.C. and M.C.C. have been redacted to protect personally identifying information and to comply with the Text Order, dated April 28, 2023, granting the Order to Proceed Under a Pseudonym (ECF No. 6). (*See* Exhibit A).  Defendant will provide the Court an unredacted copy upon request.

The first enclosures counsel submitted with the letter dated May 19, 2020, are two Form Authorizations To File Administrative Tort Claims. (*Id.* at 4-5). One authorization was executed by M.M.C., and the other was executed by M.M.C. on behalf of her daughter, M.C.C., dated May 14, 2020. (*Id.*). No Form Authorization was submitted on behalf of A.T.C. (*See id.* at 4-5).

Counsel also submitted "Standard Form 95s for each Claimant[.]" (*Id.* at 3). Only two SF-95 Forms were submitted to the government. (*See id.* at 6-7, 22-23). Box 2 of the SF-95 Forms, which requests the name and address of the claimant, contain "Claimant: M.M.C., and her minor child [M.C.C.]," and "Claimant: M.C.C. and her mother, [M.M.C.][.]" (*Id.* at 6, 22). The SF-95 form instructs, "If the incident involves more than one claimant, each claimant should submit a separate claim form." (*Id.* at 7). SF-95 Forms were only submitted for M.M.C. and M.C.C.; A.T.C. is not listed as a claimant. (*Id.* at 6-7, 22-23).

Following the SF-95 Form is a 14 page-attachment containing the heading "FTCA Standard Form 95-Attachment [] Claimants [M.M.C.], and her minor child [M.C.C.]. (*Id.* at 8). Further, counsel listed "Item 2 Claimants" in the attachment as "[M.M.C.], on behalf of herself and her minor child [M.C.C.]" (*Id.* at 9).

In Box 6 of the SF-95 form requesting the day and dates of the accident, Plaintiffs entered May 25, 2018 through July 7, 2017, the date that M.M.C. and M.C.C. were detained and the date that they were reunited. (*Id.*) In the attachment, under the heading "Item 6: Date and Day of Accident" counsel alleges that:

> The government forcibly separated [M.M.C.] . . . from her minor child [M.C.C.] . . . on or about May 25, 2018. The government detained [M.M.C.] until approximately July 17, 2018. Meanwhile, [M.M.C.'s] child, [M.C.C.] , was held separately in a shelter operated by the Department of Health and Human Services ("DHHS"). [M.C.C.] was finally reunited with [M.C.C.] on or about July 17, 2018, upon her release from detention.

(*Id.* at 9).  There is no mention of A.T.C. in this section.  (*See id.*).

Finally, under "Item 10: Nature and Extent of Injury" in the attachment, counsel states:

> Please see the facts described above in the Basis of Claim. As a result of the actions of the federal government, its employees, and its contractors, [M.M.C.] and [M.C.C.] suffered physical and emotional injury . . . and damages from their separation, detention and restrictions on liberty. Moreover, [M.M.C.] suffered damages due to the failure of the government and its agents to meet the requisite standard of medical care . . . .

(*Id.* at 20).  There is no reference to A.T.C. or any of her alleged injuries in this section.

The only mention of A.T.C. in the submission by counsel is in an attachment under the heading "Item 8: Basis of the Claim." (*Id.* at 10-11).  Here, counsel states that after M.M.C. was detained, "she underwent a medical examination and learned that she was a pregnant . . . [M.M.C.] later gave birth to a daughter, [A.T.C.], in February 2019. A.T.C. suffers from a vitamin deficiency and delayed development as a result of poor nutrition available to [M.M.C.] in detention during her pregnancy. . . . " (*Id.* At 11).  This section does not indicate that M.M.C. intended to assert a claim on behalf of A.T.C.

Because no administrative claim was ever filed on behalf of A.T.C., her claims should be dismissed.

### B.  The Claims Brought By Plaintiff A.T.C. Are Time-Barred

For similar reasons, Plaintiff A.T.C.'s claims are time-barred.  FTCA claims must be presented to the appropriate federal administrative agency within two years of accrual of the cause of action.  28 U.S.C. § 2401(b); *see also Skwira v. United States*, 344 F.3d 64, 73 (1st Cir. 2003) ("The general rule, within the meaning of the FTCA, is that a tort claim accrues at the time of the plaintiff's injury") (citing *Attallah v. United States*, 955 F.2d 776, 779 (1st Cir. 1992)).  Otherwise, the claim is time-barred from being asserted in federal district court and subject to dismissal under

Fed. R. Civ. P. 12(b)(6). *Morales-Melecio*, 890 F.3d at 371; *Holloway v. United States*, 8445 F.3d 487, 489 (1st Cir. 2017).

Because no administrative claim was filed on behalf of A.T.C. within two years of the events giving rise to her claims, those claims are time-barred and should be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Defendant United States requests that this action be dismissed for lack of subject matter jurisdiction and/or failure to state a claim upon which relief may be granted.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ZACHARY A. CUNHA
United States Attorney

*/s/ Leslie J. Kane*
LESLIE J. KANE
Assistant U.S. Attorney
One Financial Plaza, 17th Fl.
Providence, RI 02903
(401) 709-5000/(401) 709-5001 (fax)
Email: Leslie.Kane@usa.doj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2023, I electronically filed the within Motion for Dismiss with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System.  The following participants have received notice electronically:

Kathryn C. Thornton
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
kathryn.thornton@ropesgray.com

Dennis Coleman
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
dennis.coleman@ropesgray.com

Andrew J. O'Connor
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
andrew.oconnor@ropesgray.com

Nicholas Curry
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
nick.curry@ropesgray.com

*/s/ Leslie J. Kane*
Assistant U.S. Attorney