# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| M.M.C., ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILDREN, A.T.C. AND M.C.C. AND N.A.B., ON HIS OWN BEHALF AND ON BEHALF OF HIS MINOR CHILD, N.A.C., | |
| Plaintiffs, | Case No. 1:23-cv-00158-WES-LDA |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

    A.    The Zero Tolerance Policy ............................................................................. 1

    B.    The Forced Separation of the Plaintiff Families .................................................. 5

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT .................................................................................................................... 9

I.    The Court Has Jurisdiction Over Plaintiffs' Claims ................................................... 9

    A.    The Discretionary Function Exception Does Not Apply to Plaintiffs' Claims ... 10

        1.    Under DFE Prong One, Federal Officers' Conduct was Mandated by the Zero Tolerance Policy ................................................................................................. 12

        2.    Under DFE Prong One, Federal Officers' Conduct was Unconstitutional and Thus, Not Discretionary ......................................................................................... 14

            (a) Violation of Procedural Due Process ........................................................... 15

            (b) Violation of Substantive Due Process .......................................................... 17

            (c) Violation of Equal Protection ...................................................................... 19

        3.    Under DFE Prong Two, Federal Officers' Conduct Was Objectively Unreasonable ......................................................................................................... 20

    B.    The Due Care Exception Does Not Apply to Plaintiffs' Claims ......................... 21

    C.    Plaintiffs' Claims Satisfy the Private Person Analogue ..................................... 23

II.    Plaintiffs Have Sufficiently Stated Their Claims ..................................................... 27

    A.    The Government's Conduct is Not Privileged Under State Law ......................... 27

    B.    Plaintiffs Plausibly Alleged Gross Negligence and Negligence ......................... 31

    C.    Plaintiffs Plausibly Alleged Abduction of a Child ............................................. 34

III.    A.T.C.'s Claims Were Timely Submitted to the Government as Part of M.M.C.'s Administrative Claim ......................................................................................... 37

CONCLUSION ............................................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.E.S.E. v. United States*,
No. 21-cv-0569, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) .............................12, 20, 21, 36

*A.F.P. v. United States*,
No. 21-cv-00780, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ..........................12, 21, 27, 33

*A.I.I.L. v. Sessions*,
No. CV-19-00481, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) ........................................12, 21

*A.P.F. v. United States*,
492 F. Supp. 3d 989 (D. Ariz. 2020) ........................................................................10, 12, 21

*Aguilar v. U.S. Immigr.& Customs Enf't Div. of Dept. of Homeland Sec.*,
510 F.3d 1 (1st Cir. 2007) ..............................................................................................15

*Applebaum v. Nemon*,
678 S.W.2d 533 (Tex. App. 1984) ...................................................................................32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................9

*B.A.D.J. v. United States*,
No. CV-21-00215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022) ..................................12, 21

*B.Y.C.C. v. United States*,
Nos. 22-6586, 22-6587, 22-6588, 2023 WL 5237147 (D.N.J. Aug. 15, 2023) .............. *passim*

*Berkovitz v. United States*,
486 U.S. 531 (1988) ...............................................................................................11, 12, 14

*Bhuiyan v. United States*,
No. 14-cv-00013, 2017 WL 2837023 (D. N. Mar. Is. June 30, 2017), *aff'd,*
772 F. App'x 564 (9th Cir. 2019) ....................................................................................25

*Boyles v. Kerr*,
855 S.W.2d 593 (Tex. 1993) ............................................................................................32

*Browning v. Graves*,
152 S.W.2d 515 (Tex. Civ. App. 1941) ............................................................................32

*C.D.A. v. United States*,
No. 21-00469, 2023 WL 2666064 (E.D. Pa. Mar. 28, 2023) .......................................... *passim*

*C.M. v. United States*,
No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020)........................11, 12, 21, 33

*C.M. v. United States*,
No. 21-CV-00234, 2023 WL 3261612 (W.D. Tex. May 4, 2023) ................................. *passim*

*Caban v. United States*,
728 F.2d 68 (2d Cir. 1984).............................................................................................30

*Carroll v. United States*,
661 F.3d 87 (1st Cir. 2011)...........................................................................................8, 9

*Chen v. United States*,
854 F.2d 622 (2d Cir. 1988)............................................................................................25

*Clark v. Boscher*,
514 F.3d 107 (1st Cir. 2008)......................................................................................17, 19

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998).........................................................................................................17

*D. Houston, Inc. v. Love*,
92 S.W.3d 450 (Tex. 2002)..............................................................................................31

*D.A. v. United States*,
No. 22-CV-00295, 2023 WL 2619167 (W.D. Tex. Mar. 23, 2023) ............................... *passim*

*D.J.C.V. v. United States*,
605 F. Supp. 3d 571 (S.D.N.Y. 2022)........................................................................... *passim*

*Davila v. United States*,
713 F.3d 248 (5th Cir. 2013) ..........................................................................................29

*Davis v. Carlson*,
837 F.2d 1318 (5th Cir. 1988) ........................................................................................33

*De Groot v. United States*,
384 F. Supp. 1178 (N.D. Iowa 1974).........................................................................37, 38

*Dolan v. U.S. Postal Serv.*,
546 U.S. 481 (2006)...........................................................................................................8

*E.L.A. v. United States*,
No. C20-1524, 2023 WL 3456889 (W.D. Wash. May 15, 2023)...................................12, 21

*K.O. ex rel. E.O. v. United States*,
No. 20-12015, 2023 WL 131411 (D. Mass. Jan. 9, 2023)............................................. *passim*

*E.S.M. v. United States*,
    No. CV-21-00029, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022)........................12, 21, 26, 27

*Elgamal v. United States*,
    No. CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015), *aff'd sub nom.*
    *Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018)........................................................25

*F.R. v. United States*,
    No. CV-21-00339, 2022 WL 2905040 (D. Ariz. July 22, 2022)................................12, 21, 27

*Flores Benitez v. Miller*,
    No. 22-CV-00884, 2023 WL 5290855 (D. Conn. Aug. 17, 2023) ................................. *passim*

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ...................................................................................................4

*Flores v. Reno*,
    No. CV-85-4544, Dkt. No. 101 (C.D. Cal. Jan. 28, 1997) ....................................4, 23, 28, 36

*Fuentes-Ortega v. United States*,
    640 F. Supp. 3d 878 (D. Ariz. 2022) ........................................................................12, 21, 27

*García-Catalán v. United States*,
    734 F.3d 100 (1st Cir. 2013).....................................................................................................9

*Garza v. United States*,
    881 F. Supp. 1103 (S.D. Tex. 1995) ......................................................................................29

*Gill v. United States*,
    516 F. Supp. 3d 64 (D. Mass. 2021) ......................................................................................14

*Gordo-González v. United States*,
    873 F.3d 32 (1st Cir. 2017)......................................................................................................8

*Hajdusek v. United States*,
    895 F.3d 146 (1st Cir. 2018)...............................................................................8, 10, 11, 20

*Hinojosa v. City of Terrell*,
    834 F.2d 1223 (5th Cir. 1988) ...............................................................................................29

*Hydrogen Tech. Corp. v. United States*,
    831 F.2d 1155 (1st Cir. 1987)...........................................................................10, 21, 22, 23

*I.T. v. United States*,
    No. 22-cv-05333, slip op. (N.D. Cal. Feb. 24, 2023) .............................................................12

*Indian Towing Co. v. United States*,
    350 U.S. 61 (1955).................................................................................................................24

*J.P. v. Sessions*,
No. CV 18-06081, 2019 WL 6723686 (C.D. Cal. Nov. 5, 2019) ...........................................12

*J.P. v. United States*,
No. CV-22-00683, 2023 WL 4237331 (D. Ariz. June 28, 2023) ...............................12, 21, 27

*Lambert v. Fiorentini*,
949 F.3d 22 (1st Cir. 2020) ...................................................................................................17

*Lee v. United States*,
No. CV 19-08051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020)...........................................26

*Limone v. United States*,
579 F.3d 79 (1st Cir. 2009)........................................................................................11, 14, 19

*Lowe v. Scott*,
959 F.2d 323 (1st Cir. 1992)...................................................................................................15

*M.D.C.G. v. United States*,
No. 15-CV-552, 2016 WL 6638845 (S.D. Tex. Sept. 13, 2016) ....................................*passim*

*M.D.C.G. v. United States*,
No. 15-CV-552, 2018 WL 11190956 (S.D. Tex. Sept. 12, 2018) ..........................................31

*Mathews v. Eldridge*,
424 U.S. 319 (1976)................................................................................................................15

*Mazur v. U.S. Immigr. & Naturalization Serv.*,
957 F. Supp. 1041 (N.D. Ill. 1997) ........................................................................................25

*McCloskey v. Mueller*,
446 F.3d 262 (1st Cir. 2006) ..................................................................................................10

*McElroy v. United States*,
861 F. Supp. 585 (W.D. Tex. 1994)........................................................................................30

*Mejia-Mejia v. U.S. Immigr. & Customs Enf't*,
No. 18-1445, 2019 WL 4707150 (D.D.C. Sept. 26, 2019)....................................................14

*S.E.B.M. ex rel. Mendez Felipe v. United States*,
No. 21-cv-00095, 2023 WL 2383784 (D.N.M. Mar. 6, 2023) ...................................12, 14, 30

*Ms. L. v. U.S. Immigr. & Customs Enf't ("ICE")*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified,* 330 F.R.D. 285 (S.D. Cal. 2019) *and enforcement granted in part, denied in part sub nom. Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) ................................4, 12, 18

*Nuñez Euceda v. United States*,
    No. 20-CV-10793, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ...................................12, 21

*Ocasio-Hernández v. Fortuño-Burset*,
    640 F.3d 1 (1st Cir. 2011) ..........................................................................................................9

*Peña Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) .......................................................................12, 14, 18

*Price v. Valdez*,
    No. 16-CV-3237, 2017 WL 3189706 (N.D. Tex. July 27, 2017) ............................................31

*Prince v. Massachusetts*,
    321 U.S. 158 (1944) ................................................................................................................15

*Rathod v. Barr*,
    No. 20-CV-161, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) ................................................33

*Reagan v. Vaughn*,
    804 S.W.2d 463 (Tex. 1990) ..................................................................................................35

*Reyes-Colón v. United States*,
    974 F.3d 56 (1st Cir. 2020) ...........................................................................................8, 9, 11

*Roman v. Townsend*,
    224 F.3d 24 (1st Cir. 2000) ....................................................................................................27

*Ryan v. U.S. Immigr. & Customs Enf't*,
    974 F.3d 9 (1st Cir. 2020) ......................................................................................................25

*Salazar v. Collins*,
    255 S.W.3d 191 (Tex. App. 2008) ....................................................................................24, 32

*Saldana v. United States*,
    248 F.3d 1139 (5th Cir. 2001) (per curiam) ..........................................................................29

*Santiago-Ramirez v. Sec'y of Dep't of Def.*,
    984 F.2d 16 (1st Cir. 1993) ....................................................................................................37

*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) ...........................................................................................25, 26

*Shansky v. United States*,
    164 F.3d 688 (1st Cir. 1999) ..................................................................................................10

*Silcott v. Oglesby*,
    721 S.W.2d 290 (Tex. 1986) ......................................................................................24, 34, 35

*Smith v. Smith*,
   720 S.W.2d 586 (Tex. App. 1986)..................................................................................35

*Temple-Inland Forest Prods. Corp. v. Carter*,
   993 S.W.2d 88 (Tex. 1999)...........................................................................................32

*Tex. Home Mgmt., Inc. v. Peavy*,
   89 S.W.3d 30 (Tex. 2002).............................................................................................31

*Texas Dep't of Crim. Just. v. Hetzler*,
   No. 12-16-00002-CV, 2017 WL 2665659 (Tex. App. June 21, 2017)..........................24

*Thames Shipyard & Repair Co. v. United States*,
   350 F.3d 247 (1st Cir. 2003).........................................................................................11

*Troxel v. Granville*,
   530 U.S. 57 (2000) (plurality opinion) ........................................................................15

*United States v. Gaubert*,
   499 U.S. 315 (1991)......................................................................................................11

*United States v. Muniz*,
   374 U.S. 150 (1963)......................................................................................................24

*United States v. Olson*,
   546 U.S. 43 (2005)..................................................................................................24, 26

*Urizar-Mota v. United States*,
   556 F. Supp. 3d 64 (D.R.I. 2021)........................................................................37, 38, 39

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)......................................................................................................19

*Villafranca v. United States*,
   587 F.3d 257 (5th Cir. 2009) ........................................................................................29

*Weirich v. Weirich*,
   796 S.W.2d 513 (Tex. App. 1990) *rev'd on other grounds*, 833 S.W.2d 942 ...............35

*Weirich v. Weirich*,
   833 S.W.2d 942 (Tex. 1992)..........................................................................................35

*Welch v. United States*,
   409 F.3d 646 (4th Cir. 2005) ........................................................................................21

*Wilbur P.G. v. United States*,
   No. 21-cv-04457, 2022 WL 3024319 (N.D. Cal. May 10, 2022)................................... *passim*

*Zinermon v. Burch*,
    494 U.S. 113 (1990)....................................................................................15

**Statutes**

6 U.S.C. § 279(g)(2) ........................................................................................2

8 U.S.C. § 1232(b) ...........................................................................................3

8 U.S.C. § 1232(c)(2).......................................................................................22

28 U.S.C. § 1346(b)(1) ..............................................................................9, 23

28 U.S.C. § 2674.............................................................................................24

28 U.S.C. § 2675(a).....................................................................................8, 37

28 U.S.C. § 2680(a)................................................................................9, 10, 21

28 U.S.C. § 2680(h)........................................................................................31

Administrative Procedure Act.........................................................................21

Federal Tort Claims Act.......................................................................... *passim*

Texas Fam. Code § 42.001(1)-(2), 42.002(a) ................................................35

Texas Penal Code § 9.51...........................................................................28, 29

Trafficking Victims Protection Reauthorization Act......................................22

**Other Authorities**

*CBP's National Standards on Transport, Escort, Detention, and Search*, available
    at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-
    teds-policy-october2015.pdf (last visited, Sept. 18, 2023) ......................23

Fed. R. Civ. P. 8(a)(2)......................................................................................9

Fed. R. Civ. P. 12(b)(1).................................................................................10

Fed. R. Civ. P. 12(b)(6).............................................................................9, 26

Restatement (Second) of Torts § 320 (1965)..................................................32

Restatement (Second) of Torts, § 700 (1977)..........................................34, 35

## INTRODUCTION

Plaintiffs M.M.C. on her own behalf and on behalf of her minor children, M.C.C. and A.T.C., and Plaintiff N.A.B., on his own behalf and on behalf of his minor child, N.A.C. ("Plaintiffs"), bring suit against the United States ("the Government") under the Federal Tort Claims Act for tortious actions committed by federal officers carrying out the Zero Tolerance Policy ("the Policy"). Pursuant to the Policy, which was ultimately enjoined, federal officers separated minor children from their parents for prolonged periods of time, subjected parents and children to deplorable conditions in detention, and intentionally inflicted pain and suffering to deter immigration along the southwest border of the United States. Federal officers purposefully tore apart thousands of families, disregarding required legal protections, including as enshrined in the constitutional guarantees of Equal Protection and Due Process. Here, Plaintiffs bring claims of intentional infliction of emotional distress, abuse of process, gross negligence, negligence, and abduction of a child for this treatment and for the emotional and physical injuries that the Government inflicted, which will likely continue to affect them for the rest of their lives. While the current administration condemns this Policy as a "human tragedy," the Government seeks to dismiss Plaintiffs' claims, relying on arguments for lack of jurisdiction and failure to state a claim that have been overwhelmingly rejected in similar cases brought by other plaintiffs similarly separated under the Policy. For the reasons stated herein, Plaintiffs respectfully request that the Court deny the Government's motion.

## BACKGROUND

### A.    The Zero Tolerance Policy

In April 2018, President Donald Trump's administration implemented a policy of family separation in districts along the Southwest Border of the United States. Compl. ¶ 47. Attorney General (AG) Jeff Sessions subsequently issued a memorandum announcing the Zero Tolerance

Policy, which would separate families by sending parents to criminal detention and children to Office of Refugee Resettlement ("ORR") custody. *Id.*; Dkt. 1-16 at 2.[1]

Under the Policy, U.S. Attorneys along the southwest border were required to prosecute every noncitizen adult for unlawful entry—even when that adult was part of a family unit with minor children. *See* Dkt. 1-1 at 40 (describing DHS memorandum "directing DHS Border Patrol sectors to refer for prosecution *all* adults apprehended for crossing the border illegally. . . . explicitly includ[ing] family unit adults" (emphasis added)). As AG Sessions confirmed, "I have ordered our prosecutors to pursue 100 percent of the illegal entries on the Southwest border that DHS refers to us." Compl. ¶ 65 (quoting Dkt. 1-1 at 63). Indeed, when the U.S. Attorney for the Western District of Texas sought clarification, he was informed that "[n]o one in this office, including me, had any discretion on whether to accept if we were under the zero tolerance requirement from the Attorney General." Compl. ¶ 60; Dkt. 1-1 at 48. Regardless of "the age of the child, it was [] categorical," the U.S. Attorneys were "prosecuting all." Compl. ¶¶ 60-61, Dkt. 1-1 at 48.

The directive to prosecute enabled the key aspect of the Policy: "We need to take away children." Compl. ¶ 63; Dkt. 1-1 at 46. The Government used the prosecutions to reclassify children who arrived in the United States with parents able to care for them as "unaccompanied"— a designation reserved for noncitizen minor children for whom "there is no parent or legal guardian in the United States; or [] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2); Dkt. 1-1 at 18-21 (describing development of prosecution and separation). Once reclassified, the Government would transfer custody of these

---

[1] Citations to previously filed exhibit page numbers refer to the CM/ECF page number of each exhibit.

"unaccompanied" children to Health and Human Services ("HHS").    8 U.S.C. § 1232(b). Recognizing problems in implementing the Policy and its risk of "traumatic psychological injury to the child," one DHS Official later explained that "[w]hat went wrong is the children separated from their parents were referred as unaccompanied alien children when in fact they were accompanied."  Compl. ¶¶ 32-33; Dkt. 1-13 at 3.

Prior to the announcement of the Policy, the Government did not inform or coordinate with any of the relevant federal agencies, resulting in deplorable conditions at the Southwest border with a sudden and immediate influx of separately detained parents and children.  *See* Dkt. 1-1 at 21-22, 26, Compl. ¶ 51.  Indeed, the Government willfully ignored warnings that family separation would have severe repercussions on children's physical and mental health, *see* Dkt. 1-10 at 3, Dkt. 1-11 at 2-4, Compl. ¶ 26, and that the Government did not have the infrastructure or capacity to handle the influx of detained parents and children under the policy.  *See, e.g.*, Dkt. 1-5, Compl. ¶¶ 27, 33, 53.   The Government even ignored warnings that these actions would result in Constitutional violations.  Compl. ¶¶ 44, 47, 54-55.

The Zero Tolerance Policy's focus on prosecution and separation and its implementation without adequate preparations or safeguards underscored its ultimate purpose:   to deter immigration from Central America by inflicting intense emotional and physical harm on migrant families.  *See* Compl. ¶¶ 48-58, 65-67, 154; Dkt. 1-1 at 18.  White House Chief of Staff John Kelly admitted that the Trump Administration intended to deter immigration from Central America by prosecuting parents and detaining children.  Dkt. 1-23 at 2-3; Dkt. 1-12 at 3.  And even as the Government was presented with evidence of the inhumane conditions and cruel treatment separated parents and children were being subjected to, it continued to tout the "deterrence effect" of the policy.  Compl. ¶ 69; Dkt. 1-23 at 3.  The cruelty was the point.  Compl. ¶ 69.

The Zero Tolerance Policy contrasts starkly with the Government's prior policies.  A few years before the Policy was announced, an advisory committee formed by DHS advised that DHS should "operationalize the presumption" that "separation of families for purposes of immigration enforcement or management, or detention is never in the best interest of children.  Dkt. 1-6 at 6; Compl. ¶ 23.  This aligned with the longstanding *Flores* Agreement, a settlement agreement arising from a class action lawsuit, which sets "nationwide policy for the detention, release, and treatment of minors in the custody of [immigration authorities]."  *Flores v. Reno*, No. CV-85-4544, Dkt. No. 101 at ¶ 9 (C.D. Cal. Jan. 28, 1997) (hereinafter, "*Flores* Agreement").  The *Flores* Agreement prioritized releasing minors and reunifying families.  *Flores v. Lynch*, 828 F.3d 898, 903 (9th Cir. 2016); *see also Flores* Agreement at ¶¶ 12, 14 (if detention of a minor is not required, "INS shall release a minor from its custody without unnecessary delay"), ¶ 18 (requiring Government to "record the prompt and continuous efforts on its part toward family reunification and the release of the minor").[2]

The Zero Tolerance Policy continued until late June 2018 when the courts intervened, enjoining the Government from separating families and ordering those separated families reunited. Compl. ¶¶ 74, 77; *see, e.g.*, *Ms. L. v. U.S. Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146, 1149 (S.D. Cal. 2018), *modified,* 330 F.R.D. 285 (S.D. Cal. 2019) *and enforcement granted in part, denied in part sub nom. Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020).  From May 5 to June 26, 2018, the Government tore almost 4,000 children

---

[2] The Immigration and Naturalization Service ("INS") was the agency with jurisdiction over immigration matters prior to 2003, when the agency's functions were largely transferred to three new entities – U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP") – within the newly created Department of Homeland Security ("DHS").  The obligations of the *Flores* Agreement transferred with the reassignment of immigration functions.  *Flores*, 828 F.3d at 910.

from their parents. *See* Dkt. 1-29 at 9, Compl. ¶ 81. Reunification efforts continue to this date with more than 1,000 children still remaining separated as of early 2023. *See* Dkt. 1-29 at 3, Compl. ¶ 81.

### B. The Forced Separation of the Plaintiff Families

Plaintiffs experienced first-hand the cruelties of the Zero Tolerance Policy. Plaintiff M.M.C. entered the United States with her six-year-old daughter, M.C.C., through the Texas border on May 25, 2018, where they were apprehended by immigration officers. Compl. ¶¶ 83, 85 (identifying officers by name). M.M.C. and M.C.C. sought asylum in the United States to escape M.M.C.'s former partner and M.C.C.'s father who was physically, sexually, and psychologically abusive. *Id.* One day after entering the United States, federal officers forcibly separated M.M.C. from M.C.C., claiming that they would only be separated for 24 hours while M.M.C. went to court. *Id.* ¶ 90. This was a lie. They were separated for *52 days*, during which M.M.C. only spoke with her daughter six times—each time, for no more than ten minutes. *Id.* ¶¶ 110-111.

Similarly, Plaintiff N.A.B. crossed the Texas border on June 10, 2018, with his six-year-old son, N.A.C. *Id.* ¶ 124. N.A.B. and N.A.C. sought asylum in the United States due to violent persecution that N.A.B. faced as a political activist in his native Honduras. *Id.* ¶ 125. One day after entering the United States, federal officers forcibly separated N.A.B. from N.A.C., who cried "Papi! Papi! Papi!" as he was pulled away. *Id.* ¶ 129. N.A.B. was only able to speak with his son once, for a mere ten-minute phone call, during their *six weeks* apart. *Id.* ¶¶ 110, 140.

Federal officers pressured M.M.C. and N.A.B. ("Plaintiff Parents") to give up their asylum claims, using the separated children as tokens for negotiation. Both were subjected to credible fear hearings to determine if they had a claim for asylum shortly after their separation. N.A.B. was too distraught to meaningfully participate. *Id.* ¶ 131. M.M.C. was told that if she maintained her

5

asylum claim, she would be deported without her daughter. *Id.* ¶ 91, 97. Consequently, M.M.C. testified that she came to the United States for work—rather than that she was afraid to return to Guatemala—effectively giving up her asylum claim in a desperate effort to be reunited with her daughter, even though this meant she would be deported. *Id.* ¶¶ 91-92.

M.M.C. and N.A.B. each pled guilty to the misdemeanor of unlawful entry. *Id.* ¶¶ 93, 134. M.M.C was sentenced to and served for four days. *Id.* ¶ 93. After pleading guilty, N.A.B. was transferred to another facility, presumably to serve his sentence before returning to an immigration detention facility. *Id.* ¶¶ 134, 136. Neither M.M.C nor N.A.B. were reunited with their children upon their return to immigration detention. They received no hearing or opportunity to challenge the separation. Nor did they have information about the whereabouts or wellbeing of their children. *Id.* ¶¶ 91-92, 131-32. Instead, both were taunted by the Guards, including about their missing children. *Id.* ¶¶ 91, 97, 131-33. For example, Officers repeatedly told M.M.C. that her daughter "belonged to the President" now. *Id.* ¶¶ 91, 97. For N.A.B., the separation from and lack of knowledge about his son was acutely painful. Fearing that he would never be reunited with this son, N.A.B. attempted suicide by slicing his wrists with razor blades while in detention. *Id.* ¶ 135. Though he survived, the mental torture did not cease—he was placed on a plane for deportation, only to be removed and returned to detention before the plane departed. *Id.* ¶ 136.

Plaintiff Parents and their separated children were mistreated during their time in federal custody, and the families continue to suffer harm from such mistreatment. Plaintiffs were placed in overcrowded cells in facilities that were kept at freezing temperatures (known as the "hielera" or "icebox") and reeked of human waste. *Id.* ¶¶ 85-88, 128. They were denied clean water and adequate food (in fact, the food was inedible, rotten and sometimes liquified); denied adequate medical care (N.A.B. only received medical attention for his injured foot after four days of repeated

requests); and were prohibited from using the bathroom outside of scheduled times. *Id.* ¶¶ 83-118, 123-44. While she was detained, M.M.C. learned that she was pregnant with A.T.C.—a pregnancy that resulted from rape by her abuser before she fled Guatemala. *Id.* ¶ 99. M.M.C. received no counseling on the risks of carrying her pregnancy to term and she was not provided with prenatal care. *Id.* ¶¶ 100-101. Nor did her conditions of confinement improve. *Id.*

Plaintiffs suffered severe and ongoing consequences from their time in federal custody. A.T.C., who was in utero during the time of detention, was born with enduring health issues including delayed development and a vitamin D deficiency for which she is required to take injections twice a day for the first five to seven years of her life. *Id.* ¶ 121. M.C.C. has developed extreme separation anxiety, changes in her personality, and regressions in development. *Id.* ¶ 122. M.M.C. is now afraid to let her daughters out of her sight because she fears she will be unable to protect them. *Id.* ¶ 119. N.A.C. has experienced acute anxiety around police officers that remind him of officers at the border and was referred to a psychologist by his school due to his traumatic reactions to sirens and memories of his time in custody. *Id.* ¶ 146. And the relationship between N.A.B. and N.A.C. remains strained, as N.A.C. has become wary of his father, and has accused him of leaving him alone during their forced separation. *Id.* ¶ 146.

Plaintiffs timely submitted their administrative claims. Compl. ¶ 8; Dkt. 12-1. On May 19, 2020, M.M.C. and M.C.C each submitted a Standard Form 95 with a detailed description of the basis of their claims. Compl. ¶¶ 8, 121; Dkt. 12-1. Their claims detail not only the harms that they suffered, but also that A.T.C. was injured as a result of the Policy, including her vitamin D deficiency and delayed development. Compl. ¶¶ 8, 121; Dkt. 12-1 at 11, 14-15. On June 5, 2020, N.A.B. and N.A.C. submitted a Standard Form 95 with a detailed description of the basis of their claims. Compl. ¶ 8. Because the Government never made a final disposition of Plaintiffs'

administrative claims or sent a substantive response within the allotted six months, Plaintiffs' claims are deemed finally denied, and Plaintiffs have exhausted all potential administrative remedies.  28 U.S.C. § 2675(a); Complaint ¶¶ 8-11.

Plaintiffs now bring five claims against the Government for: (1) Intentional Infliction of Emotional Distress ("IIED") (brought by Plaintiffs M.M.C., M.C.C., N.A.B., and N.A.C.); (2) Abuse of Process (brought by Plaintiffs M.M.C., M.C.C., N.A.B., and N.A.C.); (3) Gross Negligence (brought by Plaintiffs); (4) Negligence (brought by Plaintiffs); (5) Abduction of a Child (brought by Plaintiffs M.M.C., M.C.C., N.A.B., and N.A.C.).  Compl. ¶¶ 148-74.

## LEGAL STANDARD

"[A]n order granting a [12(b)(1)] motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction."  *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017).  When, as here, the question before the court is whether sovereign immunity is waived under the Federal Tort Claims Act ("FTCA"), the First Circuit has instructed that the burden is on the plaintiff to show that the challenged conduct is outside the exceptions to the FTCA such that sovereign immunity does not apply.  *See Carroll v. United States*, 661 F.3d 87, 100 (1st Cir. 2011); *see also Reyes-Colón v. United States*, 974 F.3d 56, 60 (1st Cir. 2020).  However, "'unduly generous interpretations of the exceptions run the risk of defeating' the central purpose of the [FTCA]."  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 492 (2006) (citation omitted).  Thus, the question before the Court is whether, "constru[ing] the [c]omplaint liberally and treat[ing] all well-pleaded facts as true, [and] according the plaintiff the benefit of all reasonable inferences," Plaintiffs have established that subject matter jurisdiction is proper.  *Hajdusek v. United States*, 895 F.3d 146, 148 (1st Cir. 2018).

"The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). "Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate" if the complaint includes an adequate "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 11 (citing Fed. R. Civ. P. 8(a)(2)). "At the pleading stage, the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I.    THE COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

Though the United States generally is immune from suit, the FTCA provides "consent, making the United States liable for certain injuries caused by government employees acting within the scope of their employment." *Reyes-Colón*, 974 F.3d at 58. In particular, the FTCA allows plaintiffs to sue the United States for money damages for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The waiver of sovereign immunity is limited, both by the terms of § 1346 and the statutory exceptions defined in 28 U.S.C. § 2680(a). The discretionary function exception ("DFE") prohibits claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . . ." 28 U.S.C. § 2680(a); *Carroll*, 661 F.3d at 99. The due care exception ("DCE")

prohibits claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation." 28 U.S.C. § 2680(a); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987). Additionally, claims brought under the FTCA must have a "private person analogue," such that a private person would be liable for similar conduct. *See McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006).

Here, neither exception applies, and Plaintiffs' claims for intentional and negligent torts based on the separation and mistreatment of Plaintiffs by federal officers pursuant to the Zero Tolerance Policy satisfy the private person analogue. Consequently, the United States has waived sovereign immunity as to Plaintiffs' claims and this Court has jurisdiction. The Government's motion to dismiss under Rule 12(b)(1) should be denied.

### A.    The Discretionary Function Exception Does Not Apply to Plaintiffs' Claims

To determine "whether this conduct is of the nature and quality that Congress, in crafting the discretionary function exception, sought to shelter from tort liability," the Court must first "identify the conduct that allegedly caused the harm." *Hajdusek*, 895 F.3d at 150 (quoting *Shansky v. United States*, 164 F.3d 688, 690-91 (1st Cir. 1999)). Here, the harm caused to Plaintiffs flows from the separation of the Plaintiff Parents from their children over a prolonged period of time—including before and after their prosecution—in poor conditions of confinement and without information on the children's location or the ability to meaningfully contact them.[3]  *See, e.g.*, Compl. ¶¶ 83-92, 124-32, 148-74.

---

[3] The Government's formulation artificially isolates the decision to detain Plaintiffs, prosecute Plaintiff Parents, transfer custody of their children, and detain Plaintiffs in deplorable conditions, ignoring the broader course of action by federal officials under the Policy. *See B.Y.C.C. v. United States*, Nos. 22-6586, 22-6587, 22-6588, 2023 WL 5237147, at *6 (D.N.J. Aug. 15, 2023) (finding the Policy responsible for "all actions taken against Plaintiffs," including "their respective separations, potential prosecutions, detentions, and so forth"); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996-97 (D. Ariz. 2020) (rejecting attempt to "re-categoriz[e] [p]laintiffs' factual

Once the conduct is identified, the Court engages in a two-prong inquiry.  *Hajdusek*, 895 F.3d at 150.  If the answer to either prong is no, then the discretionary function exception does not apply.  *Reyes-Colón*, 974 F.3d at 59.  First, the Court asks, "[i]s the conduct itself discretionary?" *Hajdusek*, 895 F.3d at 150.  To be discretionary, the conduct must "involve an element of judgment or choice."  *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citation omitted).  "[T]he discretionary function exception will not apply when a federal statute, regulation, or *policy* specifically prescribes a course of action for an employee to follow."  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (emphasis added).  Nor does the exception apply to conduct, like the conduct at issue here, that is unconstitutional or proscribed by law.  *E.g.*, *Limone v. United States*, 579 F.3d 79, 101-02 (1st Cir. 2009); *see also Gaubert*, 499 U.S. at 322-24; *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003).  Second, the Court asks, "is the discretion susceptible to policy-related judgments?"  *Hajdusek*, 895 F.3d at 150.  The First Circuit has warned that "certain decisions by government actors, though nominally discretionary, may pass a threshold of objective unreasonableness such that no reasonable observer would see them as susceptible to policy analysis."  *Hajdusek*, 895 F.3d at 152.  Although failing either of those tests is sufficient to defeat the DFE, here, the Government fails both.

Here, Plaintiffs FTCA claims do not trigger the DFE because federal officers' tortious actions were not discretionary.  Instead, the Zero Tolerance Policy mandated their course of conduct to separate and mistreat Plaintiffs in violation of Plaintiffs' Constitutional rights to equal

---

allegations as standalone claims" because harm from separation encompasses the "conditions of confinement (including the degree of permitted communication), treatment of [p]laintiff [c]hildren . . . and the government's tracking system (or lack thereof)").  Here, Plaintiffs' allegations are incorporated into each count and should be considered together, not individually parsed out.  *See, e.g.*, *C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020).

protection and due process.  The DFE also does not apply to Plaintiffs' claims because the tortious conduct was so objectively unreasonable that it is not susceptible to policy analysis.  Indeed, almost every court to consider issue has found that the DFE does *not* bar FTCA claims brought by parents and children separated and mistreated under the Policy.[4]

### 1. *Under DFE Prong One, Federal Officers' Conduct was Mandated by the Zero Tolerance Policy*

The Zero Tolerance Policy "specifically prescribe[d] a course of action" for federal officers to follow requiring the separation and mistreatment of Plaintiffs.  *Berkovitz*, 486 U.S. at 536.  The Policy required "each [USAO] along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."  Dkt. 1-16 at 2; Compl. ¶ 49.  This policy removed any discretion U.S. Attorneys previously had in declining to prosecute.  *E.g.*, Compl. ¶¶ 60-61

---

[4] *See, e.g.*, *Flores Benitez v. Miller*, No. 22-CV-00884, 2023 WL 5290855, at *11-14 (D. Conn. Aug. 17, 2023); *B.Y.C.C.*, 2023 WL 5237147, at *5-6; *J.P. v. United States*, No. CV-22-00683, 2023 WL 4237331, at *7-9 (D. Ariz. June 28, 2023); *E.L.A. v. United States*, No. C20-1524, 2023 WL 3456889, at *3-4 (W.D. Wash. May 15, 2023); *C.M. v. United States*, No. 21-CV-00234, 2023 WL 3261612, at *23-43 (W.D. Tex. May 4, 2023); *C.D.A. v. United States*, No. 21-00469, 2023 WL 2666064, at *13-15 (E.D. Pa. Mar. 28, 2023); *D.A. v. United States*, No. 22-CV-00295, 2023 WL 2619167, at *6–10 (W.D. Tex. Mar. 23, 2023); *I.T. v. United States*, No. 22-cv-05333, slip op. at 11–13 (N.D. Cal. Feb. 24, 2023); *K.O. ex rel. E.O.*, No. 20-12015, 2023 WL 131411, at *6-10 (D. Mass. Jan. 9, 2023); *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 881-83 (D. Ariz. 2022); *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 590-97 (S.D.N.Y. 2022); *E.S.M. v. United States*, No. CV-21-00029, 2022 WL 11729644, at *4-5 (D. Ariz. Oct. 20, 2022); *B.A.D.J. v. United States*, No. CV-21-00215, 2022 WL 11631016, at *2-3 (D. Ariz. Sept. 30, 2022); *A.E.S.E. v. United States*, No. 21-cv-0569, 2022 WL 4289930, at *10-11 (D.N.M. Sept. 16, 2022); *F.R. v. United States*, No. CV-21-00339, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022); *A.F.P. v. United States*, No. 21-cv-00780, 2022 WL 2704570, at *11-13 (E.D. Cal. July 12, 2022); *Wilbur P.G. v. United States*, No. 21-cv-04457, 2022 WL 3024319, at *4-5 (N.D. Cal. May 10, 2022); *A.I.I.L. v. Sessions*, No. CV-19-00481, 2022 WL 992543, at *2-4 (D. Ariz. Mar. 31, 2022); *Nuñez Eueda v. United States*, No. 20-CV-10793, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *A.P.F.*, 492 F. Supp. 3d at 996–97; *C.M.*, 2020 WL 1698191, at *4; *see also Ms. L.*, 310 F. Supp. 3d 1133, 1142–46 (S.D. Cal. 2018); *J.P. v. Sessions*, No. CV 18-06081, 2019 WL 6723686, at *30-37 (C.D. Cal. Nov. 5, 2019).  *But see S.E.B.M. ex rel. Mendez Felipe v. United States*, No. 21-cv-00095, 2023 WL 2383784, at *15 (D.N.M. Mar. 6, 2023); *Peña Arita v. United States*, 470 F. Supp. 3d 663, 686–692 (S.D. Tex. 2020).

(explaining cases requiring separation of parents from children under five years old "should not have been declined" under the Policy) (quoting Dkt. 1-1 at 49), ¶ 65 (AG Sessions stated, "I have ordered our prosecutors to pursue 100 percent of the illegal entries on the Southwest border that DHS refers to us.") (quoting Dkt. 1-1 at 63).  The Policy's mandate to prosecute intentionally forced the separation of parents and children to deter immigration.  *E.g.*, Dkt. 1-1 at 40 (describing DHS memorandum on implementation of the Policy "directing DHS Border Patrol sectors to refer for prosecution *all* adults apprehended for crossing the border illegally . . . . explicitly includ[ing] family unit adults"); Dkt. 1-23 at 2-3 (White House Chief of Staff John Kelly admitted the Trump administration intended to deter immigration from Central America by prosecuting parents and detaining children); *see also* Compl. ¶¶ 49-58, 65-67; Mot. 14 (recognizing prosecution of parents "resulted in M.C.C.'s and N.A.C.'s placement in the care and custody of ORR").

This Court can resolve the DFE inquiry at this step because "the Government's alleged conduct did not involve an element of judgment or choice."  *B.Y.C.C. v. United States*, Nos. 22-6586, 22-6587, 22-6588, 2023 WL 5237147, at *6 (D.N.J. Aug. 15, 2023) (holding DFE did not apply to conduct under the Zero Tolerance Policy and denying defendant's motion to dismiss) (quotation omitted); *see also, e.g.*, *C.D.A. v. United States*, No. 21-469, 2023 WL 2666064, at *16 (E.D. Pa. Mar. 28, 2023), at *14 (holding the DFE did not apply, because while prosecutors typically have discretion, "the Attorney General had explicitly directed the United States Attorney's Offices at the United States–Mexico border to prosecute *all* instances of illegal entry") (emphasis in original); *Wilbur P.G. v. United States*, No. 21-cv-04457, 2022 WL 3024319, at *4 (N.D. Cal. May 10, 2022) (holding the DFE did not apply because the Policy "was a policy prescribed by the Trump Administration" and "the front-line employees tasked with implementing the policy did not reasonably have any element of choice").

The Government asserts that the DFE applies because the Policy "amounts to the exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." Mot. 15 (quoting *Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, No. 18-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019)).[5]  This argument focuses not on the conduct of the officers that separated the Plaintiffs, but on the Attorney General and the adoption of the Policy.[6]  Mot. 15-16. That focus is "at too high a level of generality."  *Limone*, 579 F.3d at 101 ("Viewed from 50,000 feet, virtually any action can be characterized as discretionary."). Instead, "the discretionary function exception requires that an inquiring court focus on the specific conduct at issue."  *Id.*; *see also Berkovitz*, 486 U.S. at 536 (focusing on "whether the action is a matter of choice for the acting employee").  Here, the federal officers that separated Plaintiffs had no "judgment or choice" under the Policy.

### 2.    *Under DFE Prong One, Federal Officers' Conduct was Unconstitutional and Thus, Not Discretionary*

By separating Plaintiffs, federal officers violated Plaintiffs' constitutional rights to procedural due process, substantive due process, and equal protection.  The DFE does not protect such conduct, because federal officers do not have discretion to violate the Constitution.  *E.g.*, *Limone*, 579 F.3d at 101-02; *Gill v. United States*, 516 F. Supp. 3d 64, 83 (D. Mass. 2021) (complaint sufficiently alleged conduct was unprotected by the DFE based on allegations that plaintiff was detained without food and water in violation of the Constitution).

---

[5] Notably, *Mejia-Mejia* concerned Bivens claims and not FTCA claims, let alone the DFE.

[6] The Government relies on *S.E.B.M.*, which makes the same error of focusing on the Attorney General, and not the federal officials enacting the policy.  2023 WL 2383784, at *15; *see also Peña Arita*, 470 F. Supp. 3d at 686-87 (likewise emphasizing the prosecutorial judgment of the United States Attorney General).  As described herein, nearly every other court considering the DFE question has found otherwise.  *See supra* n.4.

(a)    **Violation of Procedural Due Process**

By separating Plaintiff Parents from their children with no procedural safeguards and maintaining that separation without any procedure for reunification, the Zero Tolerance Policy violated Plaintiffs' right to procedural due process.  A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property'. . . *without due process of law.*"  *Lowe v. Scott,* 959 F.2d 323, 340 (1st Cir. 1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)) (emphasis original); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (explaining that due process requires "some form of hearing" prior to a deprivation).  "[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *see also Aguilar v. U.S. Immigr.& Customs Enf't Div. of Dept. of Homeland Sec.*, 510 F.3d 1, 23 (1st Cir. 2007) (recognizing "the interest of parents in the care, custody, and control of their offspring is among the most venerable of the liberty interests protected by the Fifth Amendment").[7]

---

[7] In *Aguilar*, the First Circuit narrowly held that the government's "incidental interference [with petitioners' right to family integrity], standing alone, is not of constitutional magnitude" despite separating petitioners from their minor children when the government arrested and detained the petitioners for removal from the United States.  Relying on the government's "evenhanded enforcement of the immigration laws" and the "incidental" interference with family integrity from the petitioners' detention, the First Circuit explained that "[s]o long as the detention is lawful, that so-called deprivation of the right to family integrity does not violate the Constitution."  510 F.3d at 22.  Here, the facts are critically different.  *See, e.g.*, *C.M.*, 2023 WL 3261612, at *39-40.  The government did not engage in "evenhanded enforcement" but targeted Central American immigrants for the malicious purpose of inflicting distress and deterring immigration. *Infra* Section I.A.2(c).

Here, Plaintiffs allege facts showing that federal officers violated their constitutional right to family integrity without sufficient process.  Neither M.M.C. nor N.A.B. nor their children received any hearing or process prior to their separation.  Compl. ¶ 90 (describing border patrol officers unexpectedly separating of M.M.C. from her six-year old daughter), ¶ 129 (describing border patrol officers dragging N.A.B.'s six-year old son away from him).  This separation continued without any opportunity to be heard even after Plaintiff Parents pled guilty to unlawful entry and completed their sentences.  Compl. ¶¶ 90, 93, 134, 136.  Both Plaintiff Parents were taunted by the Guards about their missing children and neither received any information about their child's location or wellbeing. Compl. ¶¶ 91, 97, 131-32.  During their 52-day separation, M.M.C. had only limited opportunities to speak with M.C.C., who was inconsolable each time. Compl. ¶¶ 110-11.  And N.A.B. was only allowed to briefly speak with N.A.C. one time during their six-week separation.  Compl. ¶ 140.

Both the initial separation and the prolonged separation, which extended beyond the Plaintiff Parents' sentence for unlawful entry, deprived M.M.C., M.C.C., N.A.B, and N.A.C. of their constitutional right to family integrity without the due process of law.  Other courts have found these separations under the Zero Tolerance Policy to violate migrant's family integrity rights.  *E.g.*, *D.A.*, 2023 WL 2619167, at *9, 18 (denying motion to dismiss based on DFE because plaintiffs sufficiently pled that "extreme separation following [plaintiff's] incarceration plausibly violated [p]laintiffs' due process rights to family integrity" and plaintiffs were given "no meaningful opportunity to be heard"); *C.M. v. United States*, No. 21-CV-0234, 2023 WL 3261612, at *35-38 (W.D. Tex. May 4, 2023) (denying motion to dismiss based on DFE because plaintiffs sufficiently pled due process violations based on prolonged separation without adequate procedural safeguards); *Flores Benitez*, No. 22-CV-00884, 2023 WL 5290855, at *13 (D. Conn.

Aug. 17, 2023); *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 591-93 (S.D.N.Y. 2022).  Based on Plaintiffs' factual pleadings on separation and lack of process, they have pled a due process violation sufficient to avoid application of DFE on the Government's motion to dismiss.

### (b)    Violation of Substantive Due Process

Plaintiffs alleged facts show that federal officers' conduct pursuant to the Policy also violated Plaintiffs' right to substantive due process.  Specifically, Plaintiffs have alleged facts showing that they "suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience." *Clark*, 514 F.3d at 112 (emphasis original); *see also Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020).  As discussed *supra*, Plaintiffs have alleged facts showing deprivation of their constitutional right to family integrity.  Thus, the critical question here is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Plaintiffs have alleged conduct by federal official that rises to the level of egregious, outrageous, and conscience-shocking.  Indeed, beyond the separations—which are cruel and shocking on their own—Plaintiffs were subjected to further egregious treatment.  Federal officers taunted both Plaintiff Parents about their missing children.  Compl. ¶¶ 91, 97, 131-32.  Federal officers also leveraged the separations to undermine Plaintiffs' claims for asylum.  N.A.B. was subjected to his credible fear interview shortly after the separation, when he was intensely emotionally distraught and unable to explain the basis for his asylum claim.  Compl. ¶ 131.  Federal officers successfully pressured M.M.C. to testify in her credible fear interview that she was *not* afraid to return to Guatemala by falsely promising to reunite M.M.C. with her daughter.  Compl. ¶¶ 91-92, 112.  Moreover, Plaintiffs were subjected to inhumane conditions in detention, including

a lack of edible food and potable water.  Compl. ¶¶ 96, 98, 101, 103-104, 133, 137, 139, 141.  "[T]he staggering backlash that the Trump Administration received following implementation of its Zero Tolerance Policy—which caused that administration to retract the policy after little over two months—evinces the conscience-shocking nature of its forced family separations." *D.A.*, 2023 WL 2619167, at *9; *see also* Compl. ¶¶ 74-81.

This Court should find—as many others have—that Government officers' violation of Plaintiffs' substantive due process rights precludes application of the DFE.  *See, e.g.*, *K.O. ex rel. E.O. v. United States*, No. 20-12015, 2023 WL 131411, at *9 (D. Mass. Jan. 9, 2023) ("This Court has no difficulty finding that separating families for 'the *in terrorem* effect it may have on others' shocks the conscience.") (citation omitted);  *D.A.*, 2023 WL 2619167, at *9 (explaining that the long-term separation "was made conscience shocking, moreover, by virtue of the sheer completeness of the separation and the cruel, heartless way it was effectuated and maintained"); *Flores Benitez*, 2023 WL 5290855, at *11-14; *C.M.*, 2023 WL 3261612, at *40; *D.J.C.V.*, 605 F. Supp. 3d at 591; *Ms. L.*, 310 F. Supp. 3d at 1142-46.

The Government seeks to avoid the effect of its unconstitutional conduct by asserting that Plaintiffs allege unconstitutional torts that are "jurisdictionally barred" under the FTCA.  Mot. 16 (citing *Peña Arita v. United States*, 470 F. Supp. 3d 663, 688 (S.D. Tex. 2020)).[8]  Not so.  Plaintiffs allege these constitutional violations not as the basis of liability, but to show that federal officers'

---

[8] The Government's reliance on *Peña Arita*, 470 F. Supp. 3d 663 is inapposite, including because the court did not consider whether the Policy was unconstitutional.  *See id.* at 686–87; *D.J.C.V.*, 605 F. Supp. 3d at 595 (finding *Peña Arita* to be inapposite because "the court there did not consider the claim that the Zero Tolerance policy was unconstitutional"); *D.A.*, 2023 WL 2619167, at *10 (finding that *Peña Arita* "neglect[ed] to consider the constitutional right to family integrity[,]" "join[ing] many district courts around the country that have found forced family separations in comparable circumstances likely unconstitutional[,]" and concluding that the defendant likely did not have discretion to separate plaintiffs).

conduct cannot qualify for the discretionary function exception because it was unconstitutional. *Limone*, 579 F.3d at 101-02; *see, e.g.*, *D.A.*, 2023 WL 2619167, at *9 ("The issue of constitutional rights is relevant only with respect to whether Defendant had discretion to act as it did and, therefore, whether it retains immunity from suit regarding Plaintiffs' state law causes of action."). Plaintiffs allege state tort claims, as is appropriate under the FTCA.  Compl. ¶¶ 148-74.

### (c)    Violation of Equal Protection

The Zero Tolerance Policy effected selective prosecution motivated by discriminatory animus against immigrants from Central America, who are typically indigenous or Latine, violating the Constitution's guarantee of equal protection.  A plaintiff plausibly alleges an equal protection violation by pleading that he was "treated differently from others similarly situated . . . based on impermissible considerations such as race."  *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) (quotation omitted); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) ("Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face.").  Here, Plaintiffs allege that the Government sought to deter immigration by people from Central America by inflicting pain and suffering on them.  Compl. ¶¶ 5, 25, 48, 52, 58, 66, 154; *see also, e.g.*, Dkt. 1-23 at 3 (explaining the Policy of prosecuting Parents and separating families was intended to "deter the people from Central America" from coming "up through Mexico to the United States").  The Policy mandated prosecution of adults "along the Southwest Border," but not along the northern border of the United States.  Dkt. 1-16 at 2; *see also, e.g.*, Compl. ¶¶ 49, 65. Thus, immigrants along the southern border with Mexico, who are predominantly Central American, were treated differently than immigrants at the northern border, who are generally not Central American.  Because federal officers' conduct violated Plaintiffs' Constitutional right to

equal protection, the conduct is not protected by the DFE.  *See D.A. v. United States*, No. 22-CV-00295, 2023 WL 2619167, at *7-8 (W.D. Tex. Mar. 23, 2023).

### 3.    *Under DFE Prong Two, Federal Officers' Conduct Was Objectively Unreasonable*

Even if this Court finds that some of the Government's conduct was discretionary, which it was not, the DFE still does not apply because the Government's "objectively unreasonable[]" conduct is not "susceptible to policy analysis."  *Hajdusek*, 895 F.3d at 152.  As repeatedly described, in order to deter immigration by migrants from Central America, federal officers separated Plaintiffs; subjected them to deplorable conditions, including freezing temperatures, rotten food, and overly chlorinated water; withheld information on the children's location and well-being; minimized contact between Plaintiff Parents and their children; taunted Plaintiff Parents about their missing children; and sought to prevent Plaintiffs from obtaining asylum, including trying to deport Plaintiff Parents and undermining their credible fear interviews.  *Supra* Background, Section B.  This conduct is objectively unreasonable and not susceptible to a policy analysis.  Even the Government's current arguments underscore the objective unreasonableness of these actions.  Mot. 18 (asserting M.C.C. and N.A.C. were "unaccompanied," while ignoring that Plaintiff Parents were "unavailable to provide care and physical custody" because of actions by federal officers pursuant to the Policy).  Indeed, on similar facts, the District of Massachusetts held this conduct was "not susceptible to a policy analysis" because "the only conceivable reason for separating these families was 'the *in terrorem* effect it may have on others.'"  *K.O.*, 2023 WL 131411, at *8 (quoting *D.J.C.V.*, 605 F. Supp. 3d at 596); *see also A.E.S.E. v. United States*, No. 21-cv-0569, 2022 WL 4289930, at *12-13 (D.N.M. Sept. 16, 2022) (finding that the Government's conduct did not implicate "exercise of a policy judgment of a social, economic, or political nature") (citation omitted).

Because the challenged conduct of federal officers was not discretionary, was unconstitutional, and was objectively unreasonable, the DFE does not bar Plaintiffs' FTCA claims.

## B.    The Due Care Exception Does Not Apply to Plaintiffs' Claims

The Zero Tolerance Policy was neither prescribed by any statute or regulation, nor did the officers of the government exercise due care in applying that policy.  Thus, the Policy meets neither of the two requirements for the DCE to apply: first "[t]he statute or regulation must "specifically [prescribe] a course of action for an officer to follow," and second "the officer must exercise due care in implementing that statute."  *K.O.*, 2023 WL 131411, at *6 (citing *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005)).[9]  Indeed, the DCE applies "only to regulations and statutes, not policies," such as the Zero Tolerance Policy in question here.  *Id.* (citing *Hydrogen Tech.*, 831 F.2d at 1160 n.5); 28 U.S.C. § 2680(a).  Just as with the DFE, almost every court to consider the DCE has found that it does not apply to bar FTCA claims of parents and children who, like the Plaintiffs in this case, were separated and mistreated by federal officers pursuant to the Policy.[10]

First, no statute or regulation required the Government to intentionally and maliciously separate families.  Rather, the Zero Tolerance *Policy* mandated federal officers' course of action.  Dkt. 1-16.  The Policy was not a statute or regulation and did not come with any of the accompanying safeguards of enactment or promulgation under the Administrative Procedure Act.

---

[9] The Government refers to the DCE as protecting "actions taken while reasonably executing law." Mot. 20–21.  This is incorrect.  For purposes of the DCE, it is not enough for an action to be taken "while executing law"—a statute or regulation must mandate the specific action.
[10] *See, e.g.*, *Flores Benitez*, 2023 WL 5290855, at *14-15; *B.Y.C.C.*, 2023 WL 5237147, at *6-7; *J.P.*, 2023 WL 4237331, at *10-11; *E.L.A.*, 2023 WL 3456889, at *4; *C.M.*, 2023 WL 3261612, at *22-23; *C.D.A.*, 2023 WL 2666064, at *15; *K.O.*, 2023 WL 131411, at *6; *Fuentes-Ortega*, 640 F. Supp. 3d at 883-84; *D.J.C.V.*, 605 F. Supp. 3d at 597-98; *E.S.M.*, 2022 WL 11729644, at *5; *B.A.D.J.*, 2022 WL 11631016, at *4; *A.E.S.E.*, 2022 WL 4289930, at *13-14; *F.R.*, 2022 WL 2905040, at *4; *A.F.P.*, 2022 WL 2704570, at *14-15; *Wilbur P.G.*, 2022 WL 3024319, at *5; *A.I.I.L.*, 2022 WL 992543, at *4-5; *Nuñez Euceda*, 2021 WL 4895748, at *3-4; *A.P.F.*, 492 F. Supp. 3d at 995-96; *C.M.*, 2020 WL 1698191, at *3.

The Government attempts to defend its federal officers' conduct based on the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232(b)(3), which requires transfer of unaccompanied minors to HHS.  However, that statute does not provide a basis, let alone a mandate, for federal officers to separate Plaintiff Parents from their children, after they arrived in the United States together.  *See K.O.*, 2023 WL 131411, at *6 ("The problem with defendant's syllogism is . . . the children were *already separated* before the TVPRA became relevant. The TVPRA might mandate a transfer to ORR after that initial separation, but the government cannot hide behind the DCE when it triggers a statutory scheme with conduct not mandated by the statute.") (emphasis original).  Nor does the TVPRA mandate that federal officers deny parents information about or communication with children in government custody.  *Id.*  Instead, contrary to the actions taken here, the TVPRA explicitly instructs federal officers to consider "the best interest of the child."  8 U.S.C. § 1232(c)(2).  Because no statute or regulation mandated the challenged conduct, the DCE does not apply.

Second, Plaintiffs have pleaded facts showing that federal officers did not exercise due care.  Tellingly, the Government does not even attempt to address this prong of the DCE in its Motion.  The First Circuit has instructed that to evaluate due care, "[t]he relevant question is one of reasonableness."  *Hydrogen Tech.*, 831 F.2d at 1161.  Based on Plaintiffs' allegations, which must be taken as true on a motion to dismiss, federal officers did not act reasonably.  Rather, federal officers intentionally and maliciously separated families in a deliberate effort to inflict pain on the affected individuals as a means of deterrence.  *See, e.g.*, Compl. ¶ 48-57; Dkt. 1-5 at 55 ("We need to take away the children"); Dkt. 1-8 at 2-4; Dkt. 1-23 at 2-3; Dkt. 1-12 at 3.  It was not reasonable for federal officers to forcibly separate Plaintiff Parents and their children; to prevent communication between Plaintiff Parents and their children during the time they were separated;

to withhold information about the whereabouts and safety of children from their parents; to pressure parents to drop their asylum claims in return for being reunited with their children; to deny necessities to Plaintiff Parents, including food and water; or to taunt and mistreat Plaintiff Parents and children in custody. *See, e.g.*, Compl. ¶¶ 90-92, 97, 101, 104, 110, 131, 133, 137, 140. Such actions fail to comport with even the basic standards mandated by the *Flores* Agreement and CBP regulations. *See Flores* Agreement ¶¶ 9, 11 (requiring minors be treated "with dignity, respect, and special concern for their vulnerability as minors"), ¶ 12A (obligating the government to "make and record prompt and continuous efforts on its part toward family reunification" and for detention facilities to "provide contact with family members who were arrested with the minor"), ¶ 18; *see also* CBP's National Standards on Transport, Escort, Detention, and Search §§ 4.13 (requiring food be provided "in edible condition (not frozen, expired or spoiled)"), 4.14 (requiring provision of "clean drinking water").[11]   In sum, the Government's actions lacked even a "minimal concern for the rights of others" and as such, the DCE does not apply.  *D.J.C.V.*, 605 F. Supp. 3d at 589 (citation omitted).

### C.    Plaintiffs' Claims Satisfy the Private Person Analogue

Plaintiffs bring claims based on specific tortious actions taken by individual federal officers which have private-person counterparts under Texas tort law,[12] thus satisfying the FTCA's private person analogue requirement.  Because the private person analogue is met, the Government has waived sovereign immunity for these claims under the FTCA.

---

[11]    Available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policy-october2015.pdf (last visited, Sept. 18, 2023).

[12] While federal law governs the scope of the FTCA's waiver of liability and its exceptions thereto, *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987), Plaintiffs agree that Texas law governs the tort claims brought in this case.  *See* 28 U.S.C. § 1346(b)(1); Mot. 24-25.

To satisfy the private person analogue and establish subject matter jurisdiction, a plaintiff must allege claims for which "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963); *see also* 28 U.S.C. § 2674. The "like circumstances" requirement does not mean "under the same circumstances." *E.g.*, *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955). Rather, a court must "look further afield" to find analogous torts relating to the government activity at issue. *United States v. Olson*, 546 U.S. 43, 44 (2005).[13]

A private individual that injured plaintiffs by forcibly separating a minor child from its parent (including through the misuse of a legal process) and that mistreated individuals in his or her custody would be liable under Texas law for each of the torts brought in Plaintiffs' Complaint: IIED, negligence, gross negligence, abuse of process, and abduction of a child. Indeed, Texas courts have allowed such claims against both state and federal defendants and in like circumstances. *See M.D.C.G. v. United States*, No. 15-CV-552, 2016 WL 6638845, at *11-12 (S.D. Tex. Sept. 13, 2016) (IIED); *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) (abduction of a child); *Texas Dep't of Crim. Just. v. Hetzler*, No. 12-16-00002-CV, 2017 WL 2665659, at *3 (Tex. App. June 21, 2017) (gross negligence); *Salazar v. Collins*, 255 S.W.3d 191, 198 (Tex. App. 2008) (negligence and gross negligence); *D.A*, 2023 WL 2619167, at *17 (IIED, negligence, and abuse of process).

The Government's attempt to recast this question as one of immigration enforcement, rather than of the specific tort claims brought by Plaintiffs, is unavailing. *See Olson*, 546 U.S. at

---

[13] Although the Government relies on *Olson*, it fails to undertake the private analogue analysis prescribed therein. *See* Mot. 22. Its argument that there is no private analogue does not even mention Plaintiffs' pleaded torts, let alone analyze whether a private person would be liable in like circumstances under Texas law.

46. Plaintiffs do not challenge the Government's authority to enforce immigration law. *See Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988). Thus, the Government's cited cases on enforcement of federal law are easily distinguishable, as their challenged conduct bears little relevance to the conduct at issue here. *See Elgamal v. United States*, No. CV-13-00867, 2015 WL 13648070, at *1 (D. Ariz. July 8, 2015) (finding no private analog for "negligent denial of an immigration status adjustment application"), *aff'd sub nom. Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018); *Bhuiyan v. United States*, No. 14-cv-00013, 2017 WL 2837023, at *4 (D. N. Mar. Is. June 30, 2017) (finding no private analog for "negligent approval of his [immigration] application"), *aff'd*, 772 F. App'x 564 (9th Cir. 2019); *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997) (finding no private analog "to take enforcement action" concerning leases for aviation facilities); *Chen*, 854 F.2d at 626 (finding no private analog to negligent and willful violations of federal procurement regulations).[14] In contrast with these cases, Plaintiffs challenge tortious conduct by federal employees relating to their forced separation. *See D.J.C.V.*, 605 F. Supp. 3d at 599 (recognizing plaintiffs challenge not "their detention *qua* detention," but "the Government's forced separation of them from each other, with the intent of inflicting torment sufficient to deter future illegal entrants").

Moreover, the Government is simply incorrect when it asserts that "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that would support a

---

[14] The Government's reliance on cases that do not concern the private person analogue, or FTCA claims at all, is inapposite. *See Mazur v. U.S. Immigr. & Naturalization Serv.*, 957 F. Supp. 1041, 1042 (N.D. Ill. 1997) (finding claim untimely filed, and not addressing private analog); *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 17 (1st Cir. 2020) (concerning Administrative Procedure Act claim, and not FTCA claim, challenging authority to make civil immigration arrests).

claim under the FTCA." Mot. 22. Instead, the Supreme Court has consistently recognized that there may be a private person analogue even when "uniquely governmental functions" are at issue. *See Olson*, 546 U.S. at 46; *Sea Air Shuttle Corp.*, 112 F.3d at 537 ("The fact that oversight of air carriers is a peculiarly governmental function does not, of course, necessarily preclude FTCA coverage . . . ."). Neither Congress nor the Supreme Court has provided an exception allowing the Government to evade liability for torts committed by its employees simply because the tort occurred as part of immigration enforcement. *See E.S.M. v. United States*, No. CV-21-00029, 2022 WL 11729644, at *3 (D. Ariz. Oct. 20, 2022) ("The fact that Defendant has exclusive authority to enforce immigration law does not give it carte blanche to commit torts against migrants in its custody."); *C.D.A.*, 2023 WL 2666064, at *16 (warning that "[t]o find otherwise would effectively immunize whole swaths of government functions from FTCA claims"). Because a private analogue exists for each of the alleged torts, the Government has waived sovereign immunity under the FTCA.

The Government's attempt to characterize this question as one of systemic tort claims is also unavailing. Plaintiffs do not generally assert systemic tort claims against the Government, but appropriately assert claims based on actions of specific government employees. *See Lee v. United States*, No. CV 19-08051, 2020 WL 6573258, at *5-6 (D. Ariz. Sept. 18, 2020) (dismissing FTCA claims for negligence of federal agency for lack of subject matter jurisdiction, but otherwise considering under Rule 12(b)(6) claims based on actions of federal employees). Plaintiffs' allegations repeatedly identify the actions of government employees, including some by name. *See, e.g.*, Compl. ¶ 85, 93 (naming some of the federal officers); *see also* ¶¶ 90-91, 96-97, 112, 128-32, 141. That the identity of some of the specific officers involved are unknown to Plaintiffs does not undermine this Court's jurisdiction. *See, e.g.*, *Wilbur P.G.*, 2022 WL 3024319, at *6

(rejecting motion to dismiss claims even where plaintiffs "are unable to name the individual Border Patrol officers who forcibly separated them and detention center employees without the benefit of discovery"); *see also K.O.*, 2023 WL 131411, at *12; *J.P. v. United States*, No. CV-22-00683, 2023 WL 4237331, at *5 (D. Ariz. June 28, 2023); *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 885 (D. Ariz. 2022); *F.R. v. United States*, No. CV-21-00339, 2022 WL 2905040, at *4 (D. Ariz. July 22, 2022). The Government provides no legal authority for its allegation that, because some of Plaintiffs' allegations reference "the government," Plaintiffs raise systemic tort claims against the United States. Rather, Plaintiffs' allegations are styled in this manner because the United States is the proper defendant in an FTCA suit. *See Roman v. Townsend*, 224 F.3d 24, 28 (1st Cir. 2000).

Because Plaintiffs allege state law torts with private person analogues against the Government for the actions of its employees, the Government has waived sovereign immunity for these claims. Many district courts to consider the issue have found private analogues for similar torts brought by other families separated under the Zero Tolerance Policy, and have rejected the Government's same arguments in the process.[15] This Court should likewise recognize that Plaintiffs' claims are properly subject to jurisdiction under the FTCA, and therefore should deny the Government's motion to dismiss for lack of jurisdiction.

## II.    PLAINTIFFS HAVE SUFFICIENTLY STATED THEIR CLAIMS

### A.    The Government's Conduct is Not Privileged Under State Law

No blanket privilege protects Government employees' tortious conduct from Plaintiffs' FTCA claims. The Government's assertion that its conduct "is privileged under Texas state law

---

[15] *E.g.*, *C.M.*, 2023 WL 3261612, at *20; *D.A.*, 2023 WL 2619167, at *10; *Flores Benitez*, 2023 WL 5290855, at *19; *K.O.*, 2023 WL 131411, at *11; *A.F.P.*, 2022 WL 2704570, at *10; *Wilbur P.G.*, 2022 WL 3024319, at *5; *E.S.M.*, 2022 WL 11729644, at *3.

and federal immigration statutes," Mot. 25, is belied by the fact that the Government cannot identify a privilege that protects the alleged intentional, tortious, and negligent actions by federal officers.  The Government does not cite any authority under Texas state law or federal law that privileges the tortious conduct at issue—the forcible separation of Plaintiff Parents from their children and the accompanying mistreatment of the families during detention.

Notably, and contrary to the caselaw relied on by the Government, Plaintiffs do not challenge an arrest or search, nor bring claims of assault or false imprisonment.  *See* Compl. ¶¶ 148-74 (alleging claims of IIED, abuse of process, gross negligence, negligence, and abduction of child).  Thus, law enforcement privileges concerning assault and false imprisonment claims for the use or display of force during an arrest do not protect Defendant's actions.  Moreover, even if these privileges could apply, they are inapplicable in view of the facts alleged in Plaintiffs' complaint which must be construed in Plaintiffs' favor at the 12(b)(6) stage.  For example, federal officers could not "reasonably believe the force" to be "immediately necessary," as required to be protected under Texas Penal Code § 9.51, when they intended to cause harm through separation and when Plaintiffs were already peaceably detained.  *See* Compl. ¶¶ 88-90, 128-30.  Likewise, the prolonged separation of approximately 52 days for M.M.C. and six weeks for N.A.B. cannot constitute an "immediately necessary" circumstance.  *See* Compl. ¶¶ 90, 144; Texas Penal Code § 9.51.  And this conduct cannot be privileged as conduct lawfully taken during enforcement of the law because Plaintiffs have adequately alleged that federal officers violated the Constitution, the *Flores* Agreement, and other federal regulations and standards when they separated Plaintiff Parents from their children and then mistreated them in detention.  *See* Compl. ¶¶ 161, 168.

Rather than invoke a specific state law privilege that protects the Government employees' tortious conduct, the Government's cited case law focuses on specific privileges for claims of

assault and false imprisonment that are inapplicable to the forced separation of Plaintiff families. For example, the Government repeatedly relies on Texas Penal Code § 9.51 which provides law enforcement privilege against assault claims for the use or display of force in the course of employment.  *See Villafranca v. United States*, 587 F.3d 257, 261 (5th Cir. 2009) (civil privilege defense is justified under Section 9.51(a) for DEA agents making an arrest where they "reasonably believe[d] the force [wa]s immediately necessary to make or assist in making an arrest or search"); *Davila v. United States*, 713 F.3d 248, 261-62 (5th Cir. 2013) (citing § 9.51 for use of force and finding privilege defense applies to claim of assault alleged after officers used reasonable force during a traffic stop); *Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) (per curiam) (finding no plain error in district court's finding that privilege applies under § 9.51(c) for use of deadly force in making an arrest at the border); *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988) (privilege for claim of assault extends to "display of force that only conditionally threatens actual force"); *Garza v. United States*, 881 F. Supp. 1103, 1107 (S.D. Tex. 1995) ("agents were privileged in aiming their weapons at [p]laintiffs").[16]  But as explained above, Plaintiffs are not bringing assault claims, but rather challenging the separation of children and parents and the subsequent mistreatment of Plaintiff families, and so this privilege cannot apply.

Likewise, privileges concerning false imprisonment are not applicable because Plaintiffs do not challenge the Government's authority to imprison someone for a crime.  Instead, Plaintiffs assert other torts that resulted from their separation and mistreatment under the Policy, which as discussed *supra* violated federal law.  The Government's cited cases confirm that even if federal

---

[16] Notably, the vast majority of the Government's cited cases concern decisions on summary judgment or at trial.  Thus, even if the Government may ultimately be able to demonstrate some applicable privilege, no privilege under federal or state law provides a basis to dismiss Plaintiffs' pleaded claims at this stage.

officers are "enforcing federal criminal and immigration statutory authorities" (Mot. 26), a specific privilege must apply to their actions and the asserted claim. *See Caban v. United States*, 728 F.2d 68, 71 (2d Cir. 1984) (applying privilege to false imprisonment claim because INS officials detained plaintiff under authority of law, but recognizing that if the prolonged detention was unlawful, it would not be privileged); *McElroy v. United States*, 861 F. Supp. 585, 595 (W.D. Tex. 1994) (determining § 9.51(a) protected use of force by officers in the execution of a valid search warrant and provided "authority of law" sufficient to undermine plaintiff's claims of false arrest and false imprisonment). Here, no privilege protects the Government's separation of accompanied children from their parents N.A.B. and M.M.C. for six weeks and 52 days respectively.

In sum, the Government has not identified any federal or Texas law that privileges its tortious conduct in separating children and parents or for mistreating them during their detention. Several courts have already rejected the Government's argument that its conduct in separating families was privileged. *B.Y.C.C.*, 2023 WL 5237147, at *10 (finding "claims do not fail under Texas law because of the existence of privileged conduct," including because plaintiffs did not allege false imprisonment which would generally "privilege the conduct of immigration officers acting under the authority of law"); *C.D.A.*, 2023 WL 2666064, at *22 (same); *see also C.M.*, 2023 WL 3261612, at *45-47 (denying privilege arguments because no state law privilege applied to separation-based claims, false imprisonment's authority-of-law privilege did not apply to other claims, and use-of-force privilege was not clearly established on the pleadings).[17]   The Court should do the same here.

_____

[17] The only case to Plaintiffs' knowledge to apply state law privilege to separation-based FTCA claims is *S.E.B.M.*, 2023 WL 2383784, *19. This case is both distinguishable because it was decided on state law grounds inapplicable to this case (namely privilege for New Mexico's IIED claim), and also inapplicable because its decision finding that the government has a privilege to

**B.      Plaintiffs Plausibly Alleged Gross Negligence and Negligence**

Because Plaintiffs plausibly alleged claims for negligence and gross negligence, including that federal officers violated duties owed to Plaintiffs under state law, the Court should deny the Government's motion as to these claims.  The Government asserts two theories for dismissing Plaintiffs' claims for negligence and gross negligence: (1) that Plaintiffs have not identified a duty under state law not to separate the Plaintiff Parents from their children, and (2) that Texas law does not recognize a claim for negligent infliction of emotional distress ("NIED").  Neither reason withstands scrutiny.

First, Plaintiffs plausibly alleged that federal officers violated duties owed to the Plaintiffs under state law.  Under Texas law, a cause of action for negligence requires *inter alia* "a legal duty owed by one person to another" and "a breach of that duty."  *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  The legal duty owed may be based on "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations."  *B.Y.C.C.*, 2023 WL 5237147, at *11-12 (quoting *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 34 (Tex. 2002)).

Here, federal officers owed the Plaintiffs a duty of care due to their special relationship and due to the foreseeability of harm to the Plaintiffs.  *See, e.g.*, *M.D.C.G. v. United States*, No. 15-CV-552, 2018 WL 11190956, at *15 (S.D. Tex. Sept. 12, 2018) ("Texas law recognizes a special relationship between law enforcement officers and their detainees, which gives rise to a duty to use reasonable efforts to protect the detainee from harm while in custody."); *Price v. Valdez*, No. 16-CV-3237, 2017 WL 3189706, at *10 (N.D. Tex. July 27, 2017) ("Under Texas law, prison or jail officials owe a duty of reasonable care to protect detainees from harm that is reasonably

---

prosecute ignores that the FTCA specifically sought to make the government liable for abuse of process.  28 U.S.C. § 2680(h).

foreseeable."); *Salazar*, 255 S.W.3d at 199 (recognizing "duty of officer to use all reasonable efforts to protect his prisoner from harm while in his custody"); *Applebaum v. Nemon*, 678 S.W.2d 533, 536 (Tex. App. 1984) (recognizing duties of schools and day care providers to render aid to minors under their care); *Browning v. Graves*, 152 S.W.2d 515, 519 (Tex. Civ. App. 1941) (recognizing jailer has duty to "care for and protect his prisoners from harm"); *see also* Restatement (Second) of Torts § 320 (stating that Texas law recognizes the duty of care owed by a private person to an individual in their custody). Federal officers breached that duty when they separated Plaintiff Parents from their children and subjected Plaintiffs to detainment under inhumane conditions, without adequate food and water or adequate medical care. Compl. ¶¶ 162, 164, 168-69.

Second, the Government's attempt to transform Plaintiffs' claims for negligence and gross negligence into a claim of NIED fails. NIED is not an independent cause of action under Texas law, but this "does not affect a claimant's right to recover mental anguish damages caused by defendant's breach of some other legal duty." *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993) (collecting cases). Here, Plaintiffs do not assert that the Government breached a duty not to negligently inflict emotional harm. Instead, they assert that federal officers violated their duty to act with ordinary care towards Plaintiffs, and they seek to recover for the damages caused by such action. Whether Plaintiffs assert emotional harm is irrelevant—Texas courts have repeatedly held that negligence and gross negligence permit the recovery of mental anguish damages. *See, e.g.*, *Temple-Inland Forest Prods. Corp. v. Carte*r, 993 S.W.2d 88, 91 (Tex. 1999) ("Whether a plaintiff can recover mental anguish damages without physical injury depends on both the nature of the duty breached and the quality of proof offered by the plaintiff.") (citation omitted). Indeed, in the context of family separation, other courts have confirmed that Texas law allows mental anguish

damages for negligence-based claims. *See C.M.*, 2023 WL 3261612, at *47 (rejecting government's motion to dismiss negligence claim based on failure to state a duty where plaintiff has plausibly alleged that Texas law recognizes a general duty of ordinary and reasonable care to those held in their custody); *C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020) (holding that immigration officials, like nursing home employees, "are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care"); *B.Y.C.C.*, 2023 WL 5237147, at *41-42; (holding that "Texas allows 'mental anguish damages' for negligence-based claims"); *A.F.P. v. United States*, No. 21-cv-00780, 2022 WL 2704570, at *10 (E.D. Cal. July 11, 2022) (holding that Texas law recognizes IIED and negligence claims where plaintiffs suffered emotional trauma).

The Government's cited cases provide no grounds for dismissing Plaintiffs' negligence and gross negligence claims because they do not affect the duty the Government owed to Plaintiffs in its custody. *See Rathod v. Barr*, No. 20-CV-161, 2020 WL 1492790, at *5 (W.D. La. Mar. 5, 2020) (observing in dicta that plaintiff lacked "a right to be housed in any particular facility"); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (dismissing wife's claims due to court's lack of power and for lack of duty to transfer her husband, a prisoner, closer to wife's residence). Nor do they undermine Plaintiffs' alleged facts—which are entitled to deference at this stage— that the separation and the care provided in detention violated the standards of care owed pursuant to those duties. *See* Compl. ¶¶ 162, 169.

In addition to mental anguish damages, Plaintiffs M.M.C., N.A.B., and A.T.C. each allege physical harm in their claims. Compl. ¶¶ 94-101, 104-107 (describing physical deprivations during M.M.C.'s detention, including due to unhygienic conditions, lack of sufficient food and potable water, and lack of prenatal care); Compl. ¶ 121 (describing A.T.C.'s vitamin D deficiency caused

by Government employees' mistreatment of M.M.C.); Compl. ¶¶ 133-39 (describing physical injury to foot, attempted suicide, and physical deprivations during N.A.B.'s detention, including unhygienic conditions, lack of edible food or potable water, and inability to sleep). Thus, Plaintiffs have sufficiently alleged their claims for negligence and gross negligence resulting in physical *and* emotional harm.

Because Plaintiffs have met the 12(b)(6) standard to adequately plead negligence and gross negligence based on Defendant's breach of its duty to Plaintiffs, the Court should deny the Government's motion.

### C.  Plaintiffs Plausibly Alleged Abduction of a Child

Similarly, the Court should deny the Government's motion because Plaintiffs plausibly alleged claims for abduction of a child for the forcible separation of Plaintiff Parents from their children by federal officers. The Government's argument concerning abduction of a child improperly imports an element from the statutory cause of action into the common law claim for abduction of a child and should be rejected. Though the Government argues that "this tort applies only when a person (usually a relative) violates a prior parental or custody *order* from a court," Mot. 29, *Silcott v. Oglesby*, on which the Government, recognized that under the common law, a parent has a cause of action in tort when "someone entices away or harbors his minor child." *See Silcott*, 721 S.W.2d at 292.

More specifically, the decision in *Silcott* adopted the test from the Restatement (Second) of Torts, which provides that:

> One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

*Id.* at 293 (citing Restatement (Second) of Torts, § 700 (1977)).  This common law claim exists alongside the statutory claim for abduction of a child under Texas law.  *See Weirich v. Weirich*, 796 S.W.2d 513, 515-16 & n.3 (Tex. App. 1990) *rev'd on other grounds*, 833 S.W.2d 942 ("It is well established that a common law cause of action for the tort of child abduction exists in Texas, and that under such a cause of action, damages for emotional distress to the parent are recoverable.") (citing Restatement (Second) of Torts § 700); *Smith v. Smith*, 720 S.W.2d 586, 600 (Tex. App. 1986) (noting "[t]he general rule is that an existing common-law right of action is not taken away by a statute save by direct enactment or necessary implication" and determining that statutory abduction of a child claim "was not enacted in derogation of the common law").  In contrast to the statutory claim for child abduction, which requires violation of a "possessory right," defined as "a court-ordered right of possession of or access to a child," *see* Tex. Fam. Code § 42.001(1)-(2), 42.002(a), the common law cause of action has no such restriction.  *See* Restatement (Second) of Torts, § 700 (1977); *Silcott*, 721 S.W.2d at 293.

The common law claim for abduction of a child aligns with Texas law's approach to other family-related torts, which underscore the need to protect not only minors, but the parent-child relationship.  *See Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990) ("It is the parent-child relationship which most deserves protection and which, in fact, has received judicial protection in the past.  The loss of a parent's love, care, companionship, and guidance can severely impact a child's development and have a major influence on a child's welfare and personality throughout life" (citations omitted) and "minors are the group most likely to suffer real harm due to a disruption of the parent-child relationship" (citations omitted)); *Weirich v. Weirich*, 833 S.W.2d 942, 948 (Tex. 1992) (Doggett, J., concurring) ("the deprivation to parent of the society of the child is itself an injury that the law redresses").

Moreover, even if this Court finds that the common law claim for child abduction imports the statutory requirement of a court-ordered right, Plaintiffs have met that burden through allegations of a violation of a court order: the *Flores* Agreement.  Plaintiffs have alleged that the *Flores* Agreement requires the Government to provide "contact with family members who were arrested with the minor" and "to make a prompt and continuous effort toward family reunification with the aim of releasing the child to a parent."  Compl. ¶ 20 (citing *Flores* Agreement ¶ 12.A). Plaintiffs further allege that the Government separated Plaintiff Parents from their children, maintained that separation, and "only permitt[ed] the most minimal contact" between Plaintiff Parents and their children, violating this court order.  Compl. ¶¶ 172-73.

Understandably, in the family separation context, other courts have allowed claims for child abduction to proceed.  *See B.Y.C.C.*, 2023 WL 5237147, at *14 (declining to "dismiss Plaintiffs' claims for tortious interference with the parent-child relationship and child abduction under Texas law"); *cf. D.A.*, 2023 WL 2619167, at *10 & n.134 (finding private person analogue because "Texas courts recognize a tort cause of action for interruption of the parent-child relationship when someone abducts, entices away, or harbors a parent's minor child."); *K.O.*, 2023 WL 131411, at *11 (finding private person analogue for tortious interference with parent-child relationship because Texas "recognize[s] a cause of action when children are abducted from their rightful custodian"); *A.E.S.E.*, 2022 WL 4289930, at *14 (finding private person analogue for IIED claim because "Texas law recognizes a claim for IIED in situations where a child is separated from their parents" (quotation omitted)).  Because the common law tort for abduction of a child covers the conduct that Plaintiffs have alleged here, this Court should do the same.

III.   **A.T.C.'S CLAIMS WERE TIMELY SUBMITTED TO THE GOVERNMENT AS PART OF M.M.C.'S ADMINISTRATIVE CLAIM**

The Government does not challenge the claims brought by M.M.C., M.C.C., N.A.B., or N.A.C. for lack of timeliness or failure to exhaust administrative remedies.   Instead, the Government only asserts these grounds against the claims brought by A.T.C., who was *in utero* when the events giving rise to her cause of action occurred.   Yet ATC is entitled to assert her claims against the Government in this case, because M.M.C.'s administrative claim identified A.T.C. and detailed the injuries that A.T.C. suffered due to the treatment her mother received under the Policy.   Contrary to the Government's assertion, the notice requirement does not necessitate that each minor child file a separate administrative claim, detailing their harm.   *See Urizar-Mota v. United States*, 556 F. Supp. 3d 64, 68-70 (D.R.I. 2021); *De Groot v. United States*, 384 F. Supp. 1178, 1179-80 (N.D. Iowa 1974).   Instead, a child can bring an FTCA claim in district court as long as the government received notice of the child's claim through an administrative claim including such a claim filed by the child's parent. 28 U.S.C.A. § 2675(a); *See Urizar-Mota*, 556 F. Supp. 3d at 68-70.

The FTCA's notice requirement is satisfied when the government is provided with (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought.   28 U.S.C.A. § 2675(a); *see Urizar-Mota*, 556 F. Supp. 3d at 68-70.   The First Circuit "approaches the notice requirement leniently, 'recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims.'"   *Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 19 (1st Cir. 1993) (finding letter satisfied the notice requirement even though it "did not mention either the FTCA, negligence or tort," because it identified appellant's

identity, date and location of incident, government agents involved, and type of injury alleged); *see also Urizar-Mota*, 556 F. Supp. 3d at 68.

The District of Rhode Island recently held that claims for loss of consortium brought by minor children satisfied the notice requirement when their mother filed an administrative claim alleging that a federally qualified health center failed to timely diagnose her brain tumor, resulting in severe and permanent injuries, because she described in a letter presenting her claim to the government that she was unable to manage the household or care for her young children. *Urizar-Mota*. 556 F. Supp. 3d at 66-70. The court found that, so long as "a practical and reasonable read" of the original administrative claim gave notice to the government, the family, including children, was entitled to proceed with bringing their consortium claims in district court. *Id*. at 69-70. Other courts have found the same in analogous scenarios. *See De Groot*, 384 F. Supp. at 1179-80 (claim brought under the FTCA on behalf of two minor children by their father was properly presented to the postal service when the father's administrative claim detailed not only the father's injuries, but also that his sons were injured in a car accident with a mail truck).

Here, M.M.C. explicitly identified the harm to A.T.C. in the administrative claim. The administrative claim explicitly identified M.M.C.'s pregnancy during detention. Dkt. 12-1 at 10. It explicitly identified the mistreatment to M.M.C. during this pregnancy,  including that (1) she was "not given enough food" and the food she was given made her nauseous; (2) she was "force[d] to drink from the sink," which had "an excess of chlorine in the water" and would make her throw up; (3) guards would wake her up in the middle of the night to do chores; (4) she had only limited access to the bathroom; and (5) her treatment and separation caused her extreme emotional distress. Dkt. 12-1 at 10-14. Critically, the claim also explicitly identified the harm to A.T.C. as a result of this treatment during detention, including that A.T.C. "suffers from a vitamin deficiency and

delayed development as a result of the poor nutrition available to [M.M.C.] in detention during her pregnancy." Dkt. 12-1 at 14. These allegations of harm to a pregnant mother and subsequent harm to the child provide sufficient notice that A.T.C. suffered harm under the lenient standard endorsed in *Urizar-Mota*. Because the administrative claim in this case provided sufficient detail to put the government on notice of A.T.C.'s claims, the Court should find that the administrative claim adequately and timely presented A.T.C.'s claim and satisfies the notice requirement of the FTCA.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss the complaint. In the alternative, Plaintiffs request leave to amend the Complaint.

Date: September 18, 2023                         Respectfully submitted,

<br>

/s/ *Kathryn C. Thornton*
Kathryn C. Thornton (admitted *pro hac vice*)
kathryn.thornton@ropesgray.com
Natalia Mercado Violand (*pro hac vice* pending)
natalia.mercadovioland@ropesgray.com
Nicholas Curry (admitted *pro hac vice*)
nick.curry@ropesgray.com
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC  20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650

/s/ *Dennis Coleman*
Dennis Coleman (RI Bar 2310)
dennis.coleman@ropesgray.com
Andrew J. O'Connor (admitted *pro hac vice*)
andrew.oconnor@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050

Brian Lebow (*pro hac vice* pending)
brian.lebow@ropesgray.com
Samantha Gagnon (*pro hac vice* pending)
samantha.gagnon@ropesgray.com
Heesoo Park (*pro hac vice* pending)
heesoo.park@ropesgray.com
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Plaintiffs*

## **RULE 7(C) STATEMENT**

Pursuant to L. R. Cv 7(c), Plaintiffs respectfully request oral argument regarding Defendant's Motion to Dismiss.  Plaintiffs estimate that oral argument will take approximately 60 minutes.


*/s/ Dennis Coleman*_____
Dennis Coleman
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2023, this document was filed electronically and is available for viewing and downloading from the Court's CM/ECF system, and that all parties will receive notice through the CM/ECF system.

*/s/ Dennis Coleman*
Dennis Coleman
*Counsel for Plaintiffs*