UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| M.M.C., ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILDREN, A.T.C AND M.C.C AND N.A.B, ON HIS OWN BEHALF AND ON BEHALF OF HIS MINOR CHILD, N.A.C.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civ. A. No. 23-CV-00158-WES-LDA |

## REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant United States of America respectfully submits this reply in support of its motion to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I. PLAINTIFFS' CLAIMS ARE BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION

In its opening brief, the United States explained why, by statute, the Court lacks subject matter jurisdiction over this case, as Plaintiffs seek to challenge policy-based discretionary determinations, and thus their claims are barred by the discretionary function exception ("DFE") to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a).[1] Plaintiffs advance several reasons why the DFE should not apply, though none has merit.

---

[1] The test for application of the DFE is set forth in the United States' motion to dismiss. ("US MTD" at 11-14). For the sake of brevity, and because the Court is already familiar with the DFE through the United States' motion to dismiss, the United States references and incorporates that analysis here in lieu of repeating it.

### A. Plaintiffs Do Not Challenge The Government's Authority To Enforce Immigration Law Or Rebut That The Government's Decisions On Prosecution Involved Discretionary Judgments.

Notably, Plaintiffs do not challenge the Government's decisions to prosecute M.M.C. and N.A.B. for illegal entry. (*See* Pl. Br. at 10-12). Nor do Plaintiffs dispute the Government's authority to detain non-citizens pending immigration proceedings, while serving a criminal sentence, or to arrange for appropriate places of detention. (*See id.*). Instead, Plaintiffs contend that they are only challenging the "separation of the Plaintiff Parents from their children" and insist that the Government "artificially isolates the decision to detain Plaintiffs, prosecute Plaintiff Parents, transfer custody of their children, and detain Plaintiffs in deplorable conditions, ignoring the broader course of action by federal officials under the Policy." (*Id.* at 10 n.3).

The separation of Plaintiffs from their children, however, was the direct result of the Government's discretionary decisions to prosecute M.M.C. and N.A.B. and to hold them in a secure immigration facility where children could not lawfully be kept. Plaintiffs cannot avoid the DFE by reframing their claims to allege that they are solely based upon the separation of parents from their children and alleged mistreatment in detention, rather than the prosecution and secure detention of M.C.C. and N.A.B. and the transfer of M.M.C. and N.A.C., when the latter directly caused the former. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995) (en banc) ("We know of no authority for the proposition that plaintiffs, by the manner in which they draft their complaints, may dictate that their claims are 'based upon' one government employee's actions and not another's.").

In asserting that the DFE does not apply, Plaintiffs focus narrowly on "identify[ing] the conduct that allegedly caused the harm[,]" which they allege is the separation of parents from their children, relying on two cases in which the courts determined that the DFE applied, *Hajdusek v.*

*United States*, 895 F.3d 146 (1st Cir. 2018) and *Shansky v. United States*, 164 F.3d 688 (1st Cir. 1999). (*See* Pl. Br. at 10). In *Hajdusek*, the First Circuit affirmed the district court's dismissal of the case for lack of subject matter jurisdiction stating that "Congress has decreed that the federal courts cannot use tort claims to second-guess the discretionary choices of federal agents who implement the government's policy choices." 895 F.3d at 153. In *Shansky*, the First Circuit affirmed the dismissal, finding that the DFE applied because the decision was susceptible to policy analysis. 164 F.3d at 696. Plaintiffs' assertion that the conduct at issue here is the harm caused by the separation of parents from their children ignores the broader context of the Zero-Tolerance Policy and the many policy considerations and decisions the Government undertook to execute it. *See United States v. Gaubert*, 499 U.S. 315, 316 (1991) ("In addition to protecting policymaking or planning functions and the promulgation of regulations to carry out programs, the [DFE] also protects Government agents' actions involving the necessary element of choice and grounded in the social, economic, or political goals of a statute and regulations.").

### B. Plaintiffs' Challenges To The Zero-Tolerance Policy Are Barred By The DFE Because They Were Susceptible To Policy Analysis And Discretionary.

Plaintiffs argue that the DFE does not apply because the "Zero Tolerance Policy 'specifically prescribe[d] a course of action' for federal officers to follow requiring the separation and mistreatment of Plaintiffs." (Pl. Br. at 12). The Policy, however, was plainly susceptible to policy considerations. *See K.W. Thompson Tool Co. v. United States*, 836 F.2d 721, 729 (1st Cir. 1988) ("Decisions concerning when, whether and whom to prosecute have traditionally been considered discretionary and have been held to fall within the discretionary function exception of 28 U.S.C. § 2680(a). . . All the components of the final determination—whether, when, whom and how—reflect the decision-maker's judgment of how best to enforce compliance and to deter misconduct in others."); *see also Gonzales v. United States*, 851 F.3d 538, 545-46 (5th Cir. 2017)

3

(provisions in Forest Service manuals regarding trail maintenance were not sufficiently specific because while they "list[ed] specific goals, . . . [they did] not prescribe a certain course employees must take to reach those goals); *Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy . . . does not remove discretion unless it specifically prescribes a course of conduct."); *Pereyra v. United States*, No. 03-CV-267, 2008 WL 11394371, *7 (D. Ariz. Sept. 26, 2008) (lawsuit arising out of care and monitoring of detainee while in Border Patrol custody barred by DFE because it was susceptible to various considerations including "manpower considerations" and "logistics"). The April 6, 2018 memorandum issued by Attorney General Sessions directed "each United States Attorney's Office along the Southwest Border—*to the extent practicable*, and in consultation with DHS—to adopt immediately a zero tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which prohibits unlawful entry into the United States. (ECF No. 1-16) (emphasis added). Thus, in its very language, the directive included discretion regarding whether implementation of the policy was practicable and appropriate, after consultation with DHS. (*See id.*). The DFE exception does not waive sovereign immunity for discretionary decisions and does not allow the Government to be sued for its discretionary decisions, even bad ones, so long as they are reasonably susceptible to policy analysis. *See Davallou v. United States*, 998 F.3d 502, 507 (1st Cir. 2021) (dismissing case for lack of subject matter jurisdiction because the DFE applied).

Here, the Plaintiffs' have not met their burden to demonstrate that the challenged conduct falls "outside the realm of possible policy decisions" and therefore not shielded by the DFE. *See Dumais v. United States*, No. 22-CV-112, 2023 WL 5237904, at *7 (D.N.H. Aug. 15, 2023) (DFE applied to bar negligence claim because plaintiff failed to allege facts that could support a finding that the Government's exercise of discretion was not susceptible to policy analysis). The

4

discretionary decisions challenged by Plaintiffs involve numerous policy considerations regarding law enforcement, immigration, and national security, and also involve actions taken by federal employees executing federal immigration statutes and regulations. None of the allegedly "non-discretionary" duties imposed by: (i) the *Flores* settlement; (ii) federal law governing the designation of migrant children as unaccompanied minors ("UACs"); and (iii) U.S. Customs & Border Protection ("CBP") policies and a federal regulation prescribe a specific course of action for the Government to follow when it comes to the conduct underlying Plaintiffs' claims—*i.e.*, the decisions to refer parents for prosecution and detain them separately from their children. For example, the *Flores* settlement does not require the release of an adult parent held in custody, compel the release of a child to a parent that remains in custody, or mandate that parents be housed with their children while in immigration detention. *See Flores v. Lynch*, 828 F.3d 898, 906-908 (9th Cir. 2016). Further, the Government's decision to classify migrant children as UACs and transfer them to the Office of Refugee Resettlement ("ORR") in the Department of Health and Human Services ("HHS") for purposes of the Trafficking Victims Protection Reauthorization Act ("TVPRA") plainly qualifies as a discretionary function. *See Freeman v. United States*, 556 F.3d 326, 340 (5th Cir. 2009) ("the government's decisions about when, where, and how to allocate limited resources within the exigencies of an emergency are the types of decisions that the discretionary function exception was designed to shelter from suit."). Thus, the policies themselves call for discretionary decision-making by federal employees, and as such, cannot be the basis for FTCA claims. *See Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("[DHS] necessarily has the authority to determine the location of detention of an alien in deportation proceedings…and therefore, to transfer aliens from one detention center to another."); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (the "[DHS's] discretionary power to

transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

### C. Plaintiffs' Allegations Of Constitutional Violations Do Not Overcome The DFE.

Plaintiffs cannot avoid application of the DFE by alleging a violation of a constitutional right. Plaintiffs argue that "[b]y separating Plaintiffs, federal officers violated Plaintiffs' constitutional rights to procedural due process, substantive due process, and equal protection." (Pl. Br. at 14). Plaintiffs further assert that the DFE does not "protect such conduct, because federal officers do not have discretion to violate the Constitution." (*Id.*). But Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). The Supreme Court has explained that, when "a federal statute, regulation, or policy *specifically* prescribes a course of action for an employee to follow," there is no further discretion to exercise. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (emphasis added).

The Supreme Court has long recognized that official conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity applies to the exercise of "discretionary functions" even when that conduct violates the Constitution, as long as the constitutional right is not defined with sufficient specificity at the time. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999) (using the DFE formulation and holding that officers were entitled to immunity because the constitutional violation was not clearly established with sufficient specificity); *Butz v. Economou*, 438 U.S. 478,

506-507 (1978) (acknowledging the need to protect officials exercising discretion subject to "clearly established constitutional limits"); *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("unless [the DFE] is to be drained of meaning, it must apply to discretionary acts that are tortious.").

Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the discretionary function exception, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296-297 (1988)). Accordingly, the DFE is not made inapplicable by any allegation of unlawful or unconstitutional conduct, rather only by a showing that the Government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. *See id.* (holding that discretion is removed under the FTCA only when a provision of federal law "*specifically prescribes a course of action for an employee to follow*.") (emphasis added); *see also, Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009) (declining to apply the DFE to conduct that the court had previously found "stated a clear violation of due process."); *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE); *Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021) (plaintiff "points to no federal statute, regulation, or policy that specifically prescribes a course of action that the prison employees here failed to follow. And, of course, the Eighth Amendment itself contains no such specific directives . . . ."); *McElroy v. United States*, 861 F. Supp. 585, 593 (W.D. Tex. 1994) ("constitutional mandate that eliminates discretion must be specific and intelligible so that the officer knows or should know he loses discretion when the particular circumstances arise which the mandate controls.").

No clearly established and specific constitutional directive constrained the Government's actions here at the time they took place. In *Aguilar v. ICE*, the First Circuit held that separating non-citizen families did not violate Substantive Due Process. 510 F.3d 1, 21-24 (1st Cir. 2007). In that case, a factory in Massachusetts was raided by ICE agents and many of the workers, undocumented immigrants, were transported to Texas and detained apart from their families. *Id.* at 6. The First Circuit ruled that the action did not "shock the conscience" because ICE had attempted to coordinate with social services beforehand and had released several detainees for humanitarian reasons; the Court concluded that the harm was the result of "ham handed" implementation, not willful malice. *Id.* at 22-23. The court observed that "interference with the right to family integrity [may be] incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country." *Id.* at 22 (holding that "such an incidental interference, standing alone, is not of constitutional magnitude."). Accordingly, this Court should recognize that the right to family integrity was not clearly established at the time of Plaintiffs' separations, and, thereby, conclude that the DFE applies notwithstanding Plaintiffs' allegation that Defendant's conduct violated the Constitution.

Plaintiffs do not address the well-settled rule that a directive can remove discretion under the first prong of the DFE analysis only if it is specific—so specific that it leaves the government actor "no room for choice." *See Gaubert*, 499 U.S. at 325.[2] Before a directive will preclude the DFE from applying, the Supreme Court's *Gaubert* decision requires that the directive "specifically prescribe a course of action for an employee to follow[.]" *Id*. at 322. To prevail on their claims,

---

[2] Plaintiffs do not cite a single First Circuit case on point, and rely instead on *Aguilar* and decisions from other Circuits. Further, the Government is unpersuaded by the Massachusetts District Court's decision in *K.O. v. United States*, No. 20-CV-12015, 2023 WL 131411 (D. Mass. Jan. 9, 2023), in light of the fact that the First Circuit had already ruled that the right to "family integrity" was not a violation of Due Process. *See Aguilar*, 510 F.3d at 22.

8

Plaintiffs must, at a minimum, allege that the Government violated a constitutional right that was clearly established and specifically prescribed at the time of the alleged violation. *Gaubert*, 499 U.S. 315. They cannot do so here.

Plaintiffs claim that the separation from their children violated the Fifth Amendment's Due Process Clause, (Pl. Br. at 14-17), which guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." On its face, this language does not provide a specific directive that prescribes how Government officials must manage minors who are rendered unaccompanied minors when their parents are prosecuted or held in secure detention.[3] It states only a broad mandate with no specifics as to how the mandate must be implemented. And even considering caselaw further explicating the meaning of that clause, the United States respectfully submits that a right to family integrity during immigration proceedings was not "clearly established" at the time of Plaintiffs separation. For example, plaintiffs rely on *Limone v. United States* to show that the DFE cannot apply to the federal officers' conduct here because it was unconstitutional. 579 F.3d 79, 101-02 (1st Cir. 2009). *Limone* is inapposite, and the underlying conduct is easily distinguishable from the conduct at issue in this case. In *Limone*, FBI agents intentionally withheld exculpatory information during a murder-for-hire investigation, and subsequently engaged in a protracted scheme to protect the identities of the actual culprits and frame the plaintiffs as scapegoats, leading to the wrongful conviction of the plaintiffs. *Id.* at 94-96. The First Circuit emphasized that the DFE "requires that an inquiring court focus on the specific conduct at issue"

---

[3] Moreover, in order to demonstrate that conduct in question constitutes a substantive due process violation, courts apply the "shock the conscience" test. However, "the measure of what is conscience shocking is no calibrated yardstick." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also DePoutot v. Raffaelly,* 424 F.3d 112, 118 n.4 (1st Cir. 2005) ("Lewis . . . clarified the law of substantive due process and made pellucid that conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action."); *Hawkins v. Freeman*, 195 F.3d 732, 738-39 (4th Cir. 1999) (en banc) (underscoring the "shock the conscience" prerequisite in executive action cases).

9

because it is "the particular conduct giving rise to the claims at issue" that must violate the Constitution. *Id.* at 101.

Moreover, as stated above, Congress enacted the FTCA to address violations of state tort law committed by federal employees—not to address constitutional violations. *See, e.g., Meyer*, 510 U.S. at 477 (recognizing that the FTCA "does not provide a cause of action" for a "constitutional tort claim"). If the DFE included an unwritten carveout for cases in which plaintiffs allege any kind of constitutional violation, it would effectively create a back door for constitutional claims under the FTCA.[4] Accordingly, the DFE is not made inapplicable by every instance of unlawful or unconstitutional conduct. At a minimum, overcoming the DFE requires a showing that the Government official's discretion was constrained by a specific, clearly established directive, along with proof that the specific directive was violated. *See, e.g., Bryan*, 913 F.3d at 364 ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE); *see also Butz*, 438 U.S. at 478 (recognizing that the DFE would apply even if alleged conduct might later be held unconstitutional). Plaintiffs fail to do so here.

Plaintiffs' contrary position appears to rest on flawed reasoning—namely, that federal officials do not have discretion to violate the Constitution, and so conduct that violates the Constitution must fall outside of the DFE. (*See* Pl. Br. at 14-18). The relevant question for purposes of the DFE, however, is not whether the defendant had discretion to violate the law. The relevant question is whether the defendant's conduct was "discretionary in nature" and "susceptible to policy analysis," whether or not that conduct might later be found to have violated

---

[4] Nor should this Court read the First Circuit's decision in *Limone* to have adopted such a categorical rule. *See* 579 F.3d at 102. In *Limone*, the First Circuit simply declined to apply the DFE to conduct that it had previously found "stated a *clear violation* of due process." *Id.* (emphasis added).

10

the law. *See Gaubert*, 499 U.S. at 322 & 325. Indeed, the FTCA expressly states that the DFE can apply "*whether or not the discretion involved be abused.*" 28 U.S.C. § 2680(a) (emphasis added). Accordingly, this Court should conclude that the DFE applies notwithstanding Plaintiffs' allegation that Defendant's conduct violated the Constitution.

### D. Plaintiffs' Claims Are Barred By The FTCA's Misrepresentation Exception.

Plaintiffs' allegations that officials "pressured M.M.C. and N.A.B. into giving up their asylum claims," based on misinformation, are barred by the FTCA's misrepresentation exception. (Pl. Br. at 5). The misrepresentation exception, 28 U.S.C. § 2680(h), prohibits claims from proceeding under the FTCA "arising out of" misrepresentation or deceit. *Id.* Accordingly, M.M.C.'s claims that she was misled by federal officers cannot proceed. *In re FEMA Trailer Formaldehyde Product Liab. Litig*, 713 F.3d 807 (5th Cir. 2013) (misrepresentation exception barred claim that FEMA failed to disclose that trailers it used for emergency housing emitted formaldehyde); *Wong v. Beebe*, No. 01-CV-718, 2007 WL 1170621, at *25-27 (D. Or. Apr. 10, 2007) (misrepresentation exception barred non-citizen's claim that INS sent her a deceitful letter to induce her to appear at an INS office), rev'd on other grounds, 381 F. App'x 715 (9th Cir. 2010).

### E. Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing The Law.

Plaintiffs' claims are also independently barred insofar as they rest on Defendant's decision to transfer the plaintiff children to the custody of ORR. Relevant here, the FTCA "shall not apply to . . . [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation." 28 U.S.C. § 2680(a). And, here, federal officials were plainly executing a statute—*i.e.*, the TVPRA, 8 U.S.C. § 1232(b)(3)—in transferring the plaintiff children to the custody of ORR. There is no dispute that this statute requires the

11

government to "transfer the custody" of UACs to the care of ORR "not later than 72 hours after" determining that there is no parent available in the United States to provide them care and physical custody. 8 U.S.C. § 1232(c); *see also* 6 U.S.C. § 279(b)(2). Thus, rather than dispute this requirement, Plaintiffs take issue with the antecedent question of whether the Government properly classified the plaintiff children as unaccompanied minors. Plaintiffs cannot avoid this exception by challenging the Government's classification of their children as UACs. At the time of the separations in this action, there was no authority which clearly precluded a non-citizen minor's classification as a UAC when a parent was to be referred for prosecution for illegal entry into the United States and transferred to federal criminal custody, and federal prosecutors had been directed to prioritize prosecution of all § 1325(a) offenses. Thus, any claims under the FTCA that necessarily turn on a plaintiff's challenge to an agency's interpretation of a federal statute are barred by 28 U.S.C. § 2680(a).

Further, the decision—interpreting a statute and deciding whether a parent is "available" to provide care and physical custody—is inherently a discretionary function. And once that determination has been made, as discussed above, the TVPRA requires the government to transfer an unaccompanied minor to the custody of ORR. Accordingly, Defendant's conduct in executing that statutory requirement falls squarely within the FTCA's exception for actions taken while reasonably executing the law.

Plaintiffs also claim that the Defendant did not allow Plaintiffs an adequate amount of communication or provide them with enough information after transferring the plaintiff children.[5]

---

[5] Any challenge to the frequency of communications between and about separated family members is barred by the DFE. Plaintiffs have identified no mandatory directives prescribing in specific terms the regularity with which non-citizen adults in secure detention facilities must be permitted to communicate with their children. Further, claims relating to the conditions of one's detention in a secure facility are in essence a challenge to discretionary, policy-based decision-

12

The act of transferring UACs pursuant to the TVPRA does not, however, encompass conduct that occurs after this transfer. And neither the TVPRA nor any other law requires that the government convey a certain minimum amount of information to parents of UACs prior to executing this transfer requirement, such that failing to do so would fall outside the FTCA's exception for actions taken while reasonably executing the law.

This exception bars any other claims that are inextricably tied to such physical separations, including Plaintiffs' challenges to limited communications between and about family members while the adult aliens were in secure detention facilities. *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims that are "inextricably tied" or "inextricably linked" to the conduct protected by section 2680(a) are also barred). This is so because the harms from the allegedly lacking communications are a direct consequence of the physical separations. *See Moore v. Valder*, 65 F.3d 189, 196-97 (D.C. Cir. 1995) (claims not "sufficiently separable" from those protected by § 2680(a) are also barred); *Johnson v. U.S. Dep't of Interior*, 949 F.2d 332, 339 (10th Cir. 1991) (claims that cannot be considered apart from each other are both barred); *Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (same).

## II. PLAINTIFFS FAILED TO STATE A CLAIM

Beyond the jurisdictional defects in Plaintiffs' Complaint, Plaintiffs also fail to state a claim for negligence, gross negligence and abduction of a child under Texas law.[6]

---

making regarding conditions of confinement that is shielded by the DFE. *See Antonelli v. Crow*, No. 08-CV-261, 2012 WL 4215024, *3 (E.D. Ky. Sept. 19, 2012) (citing cases in which conditions of confinement claims barred by the DFE).

[6] Plaintiffs' Complaint alleges claims of intentional infliction of emotional distress (Count I) and abuse of process (Count II), but fails to address them in their opposition to the Motion to Dismiss (although Plaintiffs do address allegations similar to the abuse of process in claiming a violation of Due Process. (Pl. Br. at 15-17). Accordingly, they waive any argument that Defendant's motion should be denied as to those counts. *See, e.g., Vallejo v. Santini-Padilla*, 607 F.3d 1, 7 &

### A. Plaintiffs Have Failed To State A Claim For Negligence And Gross Negligence Against The United States Because They Have Failed To Plausibly Allege That Any Alleged Breach Of Duty Proximately Caused Their Alleged Injuries.

Plaintiffs argue that the Government was negligent "when they separated Plaintiff Parents from their children and subjected Plaintiffs to detainment under inhumane conditions . . . ." (Pl. Br. at 32). Although Plaintiffs rely on *D. Houston, Inc. v. Love* to allege negligence under Texas law, tellingly, Plaintiffs left out two of the elements of a cause of action for negligence. 92 S.W.3d 450, 454 (Tex. 2002) (Pl. Br. at 31). Under Texas law, "negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (citing *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993) (applying Texas law), cert. denied (1994).

Plaintiffs do not identify any duty under Texas law that would be breached by Plaintiffs' separation or conditions of confinement. As to their separate placements, Plaintiffs do not dispute that they were lawfully arrested and detained. Plaintiffs cite to no authority that Texas law imposes a duty to maintain a parent and child together in custody during the criminal referral or prosecution process, or while the adult is being held in secure detention pendency federal immigration proceedings or serving a sentence. *See E.L.A. v. United States*, No. 20-CV-1524, 2022 WL 202046135 *6 (W.D. Wash. June 3, 2022) (dismissing negligence claim because plaintiffs could

---

n.4 (1st Cir. 2010) (noting that "[p]laintiffs have not cited a single authority in support of their assertion that their failure to timely oppose the motion to dismiss did not constitute waiver" and that "[p]laintiffs did not properly raise their arguments below"); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 645 (1st Cir. 2000) (holding that failure to brief an argument constitutes waiver); *Piazza v. Aponte Roque, 909 F.2d 35, 37* (1st Cir. 1990); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Further, Plaintiffs do not allege facts sufficient to plead child abduction. Accordingly, their wrongful child abduction claim should be dismissed as well.

14

not identify duty under state law to maintain family unity during detention).  The only "duty" of family unity that Plaintiffs have pointed to allegedly arises from the Constitution, not state law. But the Constitution cannot be the source of an actionable duty in suits brought under the FTCA; rather, the duty must arise under state law.  *See Meyer*, 510 U.S. at 478 ("[T]he United States . . . has not rendered itself liable under [the FTCA] for constitutional tort claims.").

     In an attempt to argue that the United States breached a duty owed to Plaintiffs in this case, Plaintiffs cite multiple cases recognizing, based on some special relationship between the parties, a duty to protect a plaintiff from physical injuries. (Pl. Br. at 31-32).  Further, the cases cited by Plaintiffs alleging that the federal officers owed a duty of care due to the foreseeability of harm to Plaintiffs are factually distinguishable from the present one, in that most involved allegations of negligence by prison officials arising from injury inflicted by fellow inmates rather than employees. (*Id.*).  For example, Plaintiffs rely on *M.D.C.G. v. United States*, a negligent supervision case involving an employee's harm to persons in custody. 2018 WL 11190956, at *15 (S.D. Tex. Sept. 12, 2018), aff'd in part, vacated in part, remanded, 956 F.3d 762 (5th Cir. 2020). Here, however, Plaintiffs quoted only the second part of a sentence in *M.D.C.G.* and specifically excluded the beginning of the sentence, which starts with, "[a]ccording to Plaintiffs . . . . "  In fact, the *M.D.C.G.* court expressly noted that the cases cited by Plaintiffs were factually distinguishable, because they involved allegations of negligence by prison officials arising from injury inflicted by fellow inmates rather than employees. *Id.*; *see also Salazar v. Collins*, 255 S.W.3d 191, 194 (Tex. App. 2008) (negligence action against Texas Department of Criminal Justice Executive Director and warden brought by inmate attacked with weapon by another inmate); *Browning v. Graves*, 152 S.W.2d 515, 517 (Tex. Civ. App. 1941) (wrongful death/negligence action against county sheriff and deputies arising from deadly assault by county jail inmates).  The other cases cited by Plaintiffs

are also distinguishable from this case and do not support Plaintiffs' argument that a duty existed in this case. (Pl. Br. at 31-32); *Price v. Valdez*, No. 16-CV-3237, 2017 WL 3189706, at *2 (N.D. Tex. July 27, 2017) (In a § 1983 case, court held that "[n]egligence that results in a fall from bed has been held to be a use of tangible or real property that is within the waiver of sovereign immunity."); *Applebaum v. Nemon*, 678 S.W.2d 533, 535-7 (Tex. App. 1984) (There is no Texas statute or regulation which imposes on day care centers "the specific duties to instruct its employees in procedures for medical emergencies . . . ."). Plaintiffs further misstate the Restatement (Second) of Torts § 320, which provides that a duty of care is owed "to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him[,]" stating instead that "Texas law recognizes the duty of care owed by a private person to an individual in their custody." (Pl. Br. at 32). Thus, Plaintiffs have failed to allege a duty that was breached.

### III. THE COURT SHOULD DISMISS A.T.C.'S CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND BECAUSE THEY ARE TIME-BARRED

Plaintiffs' Response further confirms that this Court should dismiss the claims brought on behalf of A.T.C. for failure to exhaust administrative remedies and because they are time barred. Plaintiffs wrongly assert that "Plaintiffs timely submitted their administrative claims[,]" because it is undisputed that no administrative claim was ever filed on behalf of A.T.C. (Pl. Br. at 7, 37). M.M.C. and M.C.C. timely filed administrative claims on May 19, 2020, but they did not identify A.T.C. as a claimant anywhere in their separate administrative claim forms or the letter attachment.[7] *See id.* It was not until the Complaint was filed that Plaintiffs and their

---

[7] Plaintiffs claim that A.T.C. was "*in utero* when the events giving rise to her cause of action occurred." (Pl. Br. at 37). While true, A.T.C. was over a year old at the time Plaintiffs M.C.C. and M.M.C. filed their administrative claims.

lawyers changed course and asserted claims not only on behalf of M.C.C. and M.M.C., but also on behalf of A.T.C.

Plaintiffs now argue that the claims filed on behalf of M.M.C. and M.C.C. "identified A.T.C. and detailed the injuries that A.T.C. suffered due to the treatment her mother received under the Policy." (Pl. Br. at 3). Plaintiffs also argue that "A.T.C.'s claims were timely submitted to the Government as part of M.M.C.'s administrative claim." (Pl. Br. at 37). That is not enough to satisfy the jurisdictional prerequisite of filing a proper claim under the FTCA. *See Hornof v. United States,* No. 19-CV-00198, 2021 WL 1651193, at *4 (D. Me. Apr. 27, 2021) ("Only Hornof's name appears on his administrative claim form; a form which instructs, "If the incident involves more than one claimant, *each claimant should submit a separate claim form.*"); *see also Tirado-Maldonado v. United States*, No. 12-CV-1673, 2013 WL 6154581, at *3 (D.P.R. Nov. 20, 2013) ("If multiple claimants exist, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim . . . .").

Plaintiffs further rationalize that the FTCA notice requirement does not "necessitate that each minor child file a separate administrative claim, detailing their harm[,]" relying on *Urizar-Mota v. United States,* 556 F. Supp. 3d 64, 66-70 (D.R.I. 2021), for the proposition that "claims for loss of consortium brought by minor children satisfied the notice requirement when their mother filed an administrative claim." (Pl. Br. at 38). The *Urizar-Mota* case cannot save A.T.C.'s claims here.

In *Urizar-Mota,* the Court considered a loss of consortium claim on behalf of plaintiff's children because it did not materially change the nature of the plaintiff's earlier timely filed claim. 556 F. Supp. 3d at 67. The *Urizar-Mota* Court noted that in Rhode Island, spouse's and children's causes of action for loss of consortium expressly derive from those of the injured family member.

17

*See id.* at 68; *see also* R.I. Gen. Laws § 9-1-41. Here, the claims asserted by A.T.C. are not for loss of consortium or any derivative claim, rather, they are independent tort claims for negligence and gross negligence claiming damages which A.T.C. allegedly suffered. *See Desjarlais v. USAA Ins. Co.*, 824 A.2d 1272, 1280 (R.I. 2003) ("[P]laintiff's loss-of-consortium claim is strictly derivative and inextricably tied to the resolution of the impaired party's claims"); *see also Sama v. Cardi Corp.*, 569 A.2d 432, 433 (R.I. 1990) ("[A]n action for loss of consortium . . . is not an independent action but a derivative one that is attached to the claim of the injured spouse. It arises from the injured spouse's physical injury and is dependent upon the success of the underlying tort claim.").

Finally, although district courts may equitably toll the FTCA's time bar when "exceptional circumstances" prevent a claimant from meeting that deadline, *Ortiz-Rivera v. United States*, 891 F.3d 20, 25 (1st Cir. 2018), doing so would not be appropriate here. First, Plaintiffs have not raised the issue of equitable tolling nor have they made any allegations that would support a tolling of the applicable statute of limitations. *See Silvia v. United States*, No. 15-CV-349, 2016 WL 802040, at *2 (D.R.I. Feb. 11, 2016), report and recommendation adopted, No. 15-CV-349, 2016 WL 843270 (D.R.I. Mar. 1, 2016). Second, M.M.C., with the assistance of counsel, was able to file timely claims on behalf of herself and her minor child, M.C.C., and does not contend that there were any circumstances that would have prevented her from doing the same on behalf of A.T.C.

### VI. CONCLUSION

For the foregoing reasons, Defendant United States requests that this action be dismissed for lack of subject matter jurisdiction and/or failure to state a claim upon which relief may be granted.

Respectfully submitted,

                         UNITED STATES OF AMERICA
By its Attorneys,

ZACHARY A. CUNHA
United States Attorney

*/s/ Leslie J. Kane*
LESLIE J. KANE
Assistant U.S. Attorney
One Financial Plaza, 17th Fl.
Providence, RI 02903
(401) 709-5000/(401) 709-5001 (fax)
Email: Leslie.Kane@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of October, 2023, I electronically filed the within Reply In Support of Defendant's Motion To Dismiss with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

    Kathryn C. Thornton
    Natalia Mercado Violand
    Nicholas Curry
    Ropes & Gray LLP
    2099 Pennsylvania Avenue, NW
    Washington, DC 20006-6807
    Tel: (202) 508-4600/Fax: (202) 508-4650
    kathryn.thornton@ropesgray.com
    natalia.mercadovioland@ropesgray.com
    nick.curry@ropesgray.com

    Dennis Coleman
    Andrew J. O'Connor
    Ropes & Gray LLP
    800 Boylston Street
    Boston, MA 02199-3600
    Tel: (617) 951-7000/Fax: (617) 951-7050
    dennis.coleman@ropesgray.com
    andrew.oconnor@ropesgray.com

    Brian Lebow
    Samantha Gagnon
    Heesoo Park
    Ropes & Gray LLP
    1211 Avenue of the Americas
    New York, NY 10036-8704
    Tel: (212) 596-9000/Fax: (212) 596-9090
    brian.lebow@ropesgray.com
    samantha.gagnon@ropesgray.com
    heesoo.park@ropesgray.com

    */s/ Leslie J. Kane*
    Assistant U.S. Attorney