**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| M.M.C., ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILDREN, A.T.C. AND M.C.C. AND N.A.B., ON HIS OWN BEHALF AND ON BEHALF OF HIS MINOR CHILD, N.A.C., <br><br>　　　　　　Plaintiffs, <br><br>　　v. <br><br> UNITED STATES OF AMERICA, <br><br>　　　　　　Defendant. | Case No. 1:23-cv-00158-WES-LDA |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs submit this sur-reply to address new arguments raised for the first time in the Government's reply brief and to respond to its incorrect statement of the of law concerning the application of the discretionary function exception (DFE) to unconstitutional conduct and the duty of care that the Government owed Plaintiffs under Texas law.[1]

### A.  The Government's New Argument on the Misrepresentation Exception Is Untimely and Inapplicable.

Despite the Government's cursory and belated assertion that Plaintiffs' claims are barred by 28 U.S.C. § 2680(h), the FTCA's misrepresentation exception does not bar Plaintiffs' claims. As a threshold matter, because the Government did not raise this argument in its Motion to Dismiss, the Court need not address it. *See* DRI LR Cv 7(a)(4) ("A reply shall not present matters that do not relate to the response . . . ."); *United States v. Brennan,* 994 F.2d 918, 922 n.7 (1st Cir. 1993)) ("[I]t is well settled that 'a legal argument made for the first time in a[] [party's] reply brief

---

[1] Plaintiffs maintain their other disagreements with the Government's motion detailed in their Response (Dkt. 17) but avoid retreading those arguments already made.

1

comes too late and need not be addressed.'") (citation omitted); *see also Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir.1999); *In re Loestrin 24 Fe Antitrust Litig.*, 261 F. Supp. 3d 307, 336 (D.R.I. 2017). As to the merits, the misrepresentation exception does not bar actions for independent torts that only collaterally involve misrepresentations. *See Block v. Neal*, 460 U.S. 289, 297 (1983) (holding the misrepresentation exception does not bar negligence actions focused on a duty other than "the Government's failure to use due care in communicating information"); *Limone v. United States*, 579 F.3d 79, 92 (1st Cir. 2009) (explaining claims are not barred if there is only "a loose connection, a family resemblance, or even a partial overlap between the conduct" alleged and an excepted tort under § 2680(h)). Other courts adjudicating family separation suits against the government have held that the misrepresentation exception does not apply in this context because "[t]he heart of plaintiffs' FTCA claims . . . is not the officials' alleged coercion, but their separation." *D.J.C.V. v. United States,* 605 F. Supp. 3d 571, 598 (S.D.N.Y. 2022); *see also, e.g.*, *Flores Benitez v. Miller*, No. 22-CV-00884, 2023 WL 5290855, at *15–16 (D. Conn. Aug. 17, 2023); *A.I.I.L. v. Sessions*, No. CV-19-00481, 2022 WL 992543, at *5 (D. Ariz. Mar. 31, 2022).

So too here. Plaintiffs allege that the Government's tortious conduct primarily comprised the separation of Plaintiff Parents from their children over a prolonged period in poor conditions. *See, e.g.*, Compl. ¶¶ 82-92, 124-32, 148-74. Furthermore, the threats made to Plaintiff Parents during their detention and credible fear interviews concerning the temporary and permanent separation of children from their parents were either *not* misrepresentations or tangential to the claim. Plaintiffs experienced separation at the hands of the Government and indeed, many other children remain separated from their parents due to the Zero Tolerance Policy. *See, e.g.*, Compl. ¶¶ 63, 66, 81. To suggest that this case is based on a "failure to use due care in communicating information," *Block*, 460 U.S. at 297, would require a wild misinterpretation of Plaintiffs' claims.

For these reasons, the Government's assertion that the misrepresentation exception applies here should be disregarded.

### B. The Government—not Plaintiffs—Waived Arguments on Plaintiffs' IIED and Abuse of Process Claims by Not Addressing Those Claims in its Motion.

The Government's initial Motion did not seek to dismiss Plaintiffs' claims for intentional infliction of emotional distress (IIED) or for abuse of process for failure to state a claim, and therefore the Government has waived any request to dismiss these claims on such grounds. The Government's new assertion that Plaintiffs, not Defendant, waived its arguments concerning dismissal of claims for IIED and abuse of process for failure to state a claim should be rejected. Dkt. 19 at 13, n.6. In particular, the Government's Motion to Dismiss asserted broad arguments, including on sovereign immunity, the discretionary function exemption and government privilege. Dkt. 12 at 11-27. Plaintiffs duly responded to those arguments. Dkt. 17 at 18-39. And the Government raised more specific arguments that a subset of Plaintiffs' claims failed to state a claim under Texas law, to which Plaintiffs similarly responded. *Compare* Dkt. 12 at 24, 27-30 (arguing for dismissal of negligence, gross negligence, and abduction of a child for failure to state a claim under Texas Law without addressing IIED and abuse of process) *with* Dkt. 17 at 40-45 (addressing government's arguments on negligence, gross negligence, and abduction of a child). The Government did not raise specific arguments as to IIED and abuse of process in its Motion. Consequently, the Government has waived any argument that Plaintiffs' IIED and abuse of process claims should be dismissed for failure to state a claim under Texas law. *E.g.*, *United States v. Torres*, 162 F.3d 6, 11 (1st Cir. 1998) ("[I]ssues raised for the first time in an appellant's reply brief are generally deemed waived."); *Brennan,* 994 F.2d at 922 n.7. Plaintiffs' response properly addressed the more general content of the Government's motion as it may apply to IIED and abuse of process, but they were not required to raise—and therefore have not waived—more specific

3

responses to un-made arguments about whether those claims were adequately stated under Texas law.[2]

### C. Contrary to the Government's Assertion, DFE Does Not Apply to Unconstitutional Conduct.

Plaintiffs bring claims under state tort law for conduct that also happens to violate the Constitution. Compl. ¶¶ 148-74; *see Limone*, 579 F.3d at 102 (holding the court had subject matter jurisdiction for plaintiffs' state law IIED claims for conduct that violated due process). Contrary to First Circuit law, the Government now seeks to expand the discretionary function exception to FTCA liability to cover certain unconstitutional conduct. Dkt. 19 at 6-7.

The First Circuit has made clear that the DFE does not "shield conduct that transgresses the Constitution." *Limone*, 579 F.3d at 101[3]; *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003) ("denying protection [of DFE] to actions that are unauthorized because they are unconstitutional"); *see also Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (holding "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription") (collecting cases).

In contrast, the Government contends that DFE applies to unconstitutional conduct "as long as the constitutional right is not defined with sufficient specificity at that time" and unless "the

---

[2] To the extent the Government's assertion that Plaintiff did not address its IIED or abuse of process claims was somehow intended to refers to the Government's broader jurisdictional arguments, this Court has jurisdiction over these claims for the myriad reasons stated in Plaintiffs' response brief—which were not limited to non-IIED or abuse of process claims. Dkt. 17 at 18-36. Likewise, to the extent it referred to the Government's arguments on state law privileges, Plaintiff addressed that argument in its response, and the Government offered no reply. *See* Dkt. 17 at 36-39.

[3] Although the First Circuit in *Limone* relied on a related action concerning qualified immunity, in which plaintiffs both stated and proved "a clear violation of due process," to find that the DFE did not apply, the Court did not require the constitutional violation to be clear in order to meet the DFE standard under the FTCA. *Limone*, 579 F.3d at 102; *see* Dkt. 19 at 7. Instead, the First Circuit concluded that "the conduct was unconstitutional and, therefore, not within the sweep of the discretionary function exception." *Limone*, 579 F.3d at 102.

Government official's discretion was limited by a specific, clearly established directive." Dkt. 19 at 6-7. The Government's reasoning is primarily based on cases that concern qualified immunity of federal officials, which do not reflect the legal standards of the FTCA, but instead reflect the risk to federal officials of harassing lawsuits and personal monetary liability.[4] *See* Dkt. 19 at 6-7 (citing, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (examining qualified immunity for personal liability); *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (same); *Butz v. Economou*, 438 U.S. 478, 507 (1978) (same)); *see also Loumiet*, 828 F.3d at 946 (finding no precedent in any circuit has held "that principles similar to those that undergird qualified immunity should extend to preserve discretionary-function immunity for some unconstitutional acts"). In light of the First Circuit's clear directive *in FTCA cases*, the Court should reject the Government's analogy to qualified immunity cases.

While Plaintiffs need not meet the Government's higher bar to show that DFE does not apply to the Government's unconstitutional conduct, Plaintiffs' allegations in fact satisfy even that higher standard. The Government's intentional separation of families contravened the well-established right to family integrity, guaranteed by the Constitutional right to due process. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *see also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."). Although the Government asserts that *Aguilar v. USCIS*

---

[4] Other cited cases are inapposite for different reasons. *E.g.*, *Berkowitz v. United States*, 486 U.S. 531, 536 (1988) (stating DFE does not apply when "a federal statute, regulation, or policy specifically prescribes a course of action" but not addressing constitutional proscriptions); *Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021) (explaining appellant did not argue on appeal for lack of discretion based on conduct violating the Eighth Amendment); *Bryan v. United States*, 913 F.3d 356, 362 (3d Cir. 2019) (refusing to "opine as to whether there were underlying Fourth Amendment violations involved in the search" but relying on the Bivens standard advanced by appellants to address FTCA claims).

5

indicates that there is no right to family integrity, Dkt. 19 at 8, the First Circuit's decision in *Aguilar* turned on the facts of that particular case and recognized that future cases involving family separation could rise to a level of interference with constitutional rights. *See Aguilar v. USCIS*, 510 F.3d 1, 22 (1st Cir. 2007) (recognizing that evenhanded enforcement avoided constitutional violations, but that unlawful detentions or separations that were not merely incidental to removal proceedings risked constitutional violations). In contrast with *Aguilar*, family separations are not incidental here—instead, the Government intended to deter immigration by inflicting intense emotional and physical harm to Plaintiffs through their separation and detention and minimizing their opportunity to obtain asylum. *E.g.*, Compl. ¶¶ 48-58, 65-67, 154; Dkt. 1-1 at 18. Moreover, the Government's intentional targeting of asylum seekers from Central America, who are often indigenous or Latine, violated another clearly established constitutional guarantee: that of equal protection.[5] *See D.A. v. United States*, No. EP-22-CV-00295, 2023 WL 2619167, at *8 (W.D. Tex. Mar. 23, 2023) (denying in part government's motion to dismiss, including because the "Zero Tolerance Policy plausibly amounted to selective prosecution motivated by discriminatory animus against Latino immigrants" and thus plausibly violated their equal protection rights). *Cf. Scott v. Gelb*, 810 F.3d 94, 100 (1st Cir. 2016) (confirming *Batson*, which held that that Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race, "constitutes clearly established law"). Thus, even if Plaintiffs were required to show that their constitutional rights were "clearly established," the Government's unconstitutional violations of due process and equal protection through the intentionally cruel policy of separating families, targeted at Central American immigrants, readily meets that standard.

---

[5] Tellingly, the Government did not address prohibitions in equal protection in its reply. *See* Dkt. 19 at 6-11. Instead, the Government asserted generally that "[n]o clearly established and specific constitutional directive constrained the Government's actions at the time they took place." Dkt. 19 at 8.

### D. Contrary to the Government's Assertion, Federal Officers Owed Plaintiffs a Duty of Care under Texas Law.

The Government also misinterprets Texas law to suggest that the Government did not owe a duty based on its special relationship with human beings in the Government's custodial care. In seeking to factually distinguish *M.D.C.G.* and other cases cited by Plaintiffs, the Government ignores the repeated finding that a special relationship exists between detainees and their custodians, such that there is a duty of reasonable care to protect detainees from foreseeable harm.[6] *Price v. Valdez*, No. 16-CV-3237, 2017 WL 3189706, at *10 (N.D. Tex. July 27, 2017) (finding no sovereign immunity for officer sued for harm inmate experienced falling from bed, including because "[u]nder Texas law, prison or jail officials owe a duty of reasonable care to protect detainees from harm that is reasonably foreseeable."); *Cuevas v. Westerman*, No. 14-CV-133, 2018 WL 6579041, at *5 (S.D. Tex. June 15, 2018) (finding CBP agent "was under a duty to act in a reasonably prudent manner," due to his prisoner-guard relationship with hospitalized immigration detainee, but that threat of assault from another guard was not foreseeable). *Cf. C.M. v. United States*, Nos. CV-19-05217, CV-20-00065, 2023 WL 7102132, at *15 (D. Ariz. Oct. 24, 2023) (denying summary judgment for negligence claim, but finding under Arizona law that "[l]ike a jailor-prisoner relationship, federal immigration officials owe a duty of care to noncitizens that they detain and hold in custody").

---

[6] While the Government correctly points out that Plaintiffs inartfully quoted from a portion of *M.D.C.G.* describing the plaintiffs' position in that case, Dkt. 19 at 15, the government fails to mention that the quote is consistent with the *M.D.C.G* Court's own express position. In particular, the Southern District of Texas explained that even if plaintiffs' cited cases do not themselves deal with actions by employees, the "duties recognized by these [cited] cases are more open-ended: the defendants in *Wackenhut* conceded their duty 'to ensure the inmates' safety in the prison'; the court in *Salazar* found that the Texas Department of Criminal Justice ("TDCJ") 'and its officials and employees who exercise supervisory authority in its prisons have a 'special relationship' with TDCJ inmates and thus owe a duty of reasonable care to protect inmates from harm when that harm is reasonably foreseeable'; and in *Browning*, 'it [was] conceded that it is the duty of the officer to use all reasonable efforts to protect his prisoner from harm while in his custody.'" *See M.D.C.G. v. United States*, No. 15-CV-552, 2018 WL 11190956, at *15-16 (Sept. 12, 2018), *aff'd in part, vacated in part, remanded*, 956 F.3d 762 (5th Cir. 2020).

7

Likewise, in attempting to distinguish Restatement (Second) of Torts § 320, which does concern "the duty of care owed 'to control the conduct of third persons as to prevent them from intentionally harming'" another, the Government ignores that Plaintiffs rely on this as an example of duty of care owed for those based on the parties' special relationship and the foreseeability of harm to the Plaintiffs, which extends more broadly than the third party scenario encompassed in § 320. *See* Restatement (Second) of Torts § 314A(4) (recognizing that "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" owes a duty of care "to protect against unreasonable risk of physical harm" and "to give them first aid after it knows or has reason to know that they are ill or injured"); *Compare* Dkt. 19 at 16 *with* Dkt. 17 at 40-41. Against this backdrop and the absence of direction from the Texas Supreme Court, the Court should reject the Government's attempt to artificially constrain a custodian's duty to guard against harm only to harm done by others, and not by the custodian itself. Based on Plaintiffs' allegations that they were in the Government's custody and that the harm to Plaintiffs from the Government's actions was foreseeable—and indeed, intended—Plaintiffs have sufficiently alleged that the Government owed them a duty. *E.g.*, Compl. ¶¶ 26-57, 124-32, 148-74.[7]

## CONCLUSION

WHEREFORE, for the foregoing reasons stated herein and the reasons enumerated in Plaintiffs' Response (Dkt. 17), Plaintiffs respectfully request that the Court deny Defendant's

---

[7] In its motion, the Government asserted that "Plaintiffs have not identified a duty under state law not to separate them." Dkt. 12 at 27, 29. Now, the Government asserts that Plaintiffs have failed to allege both that a duty was owed or that a duty was breached. Dkt. 19 at 14-16. Again, arguments raised for the first time in a reply are waived. *E.g.*, *Torres*, 162 F.3d at 11; *Brennan*, 994 F.2d at 922 n.7. Nonetheless, Plaintiffs have also alleged that the Government breached the duty owed to Plaintiffs, including by separating them, maintaining that separation, and detaining them in poor conditions. Compl. ¶¶ 82-92, 124-32, 148-74.

Motion to Dismiss the Complaint. In the alternative, Plaintiffs request leave to amend the Complaint.

Date: November 13, 2023                                Respectfully submitted,

*/s/ Kathryn C. Thornton*
Kathryn C. Thornton (admitted *pro hac vice*)
kathryn.thornton@ropesgray.com
Natalia Mercado Violand (admitted *pro hac vice*)
natalia.mercadovioland@ropesgray.com
Nicholas Curry (admitted *pro hac vice*)
nick.curry@ropesgray.com
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC  20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650

*/s/ Dennis Coleman*
Dennis Coleman (RI Bar 2310)
dennis.coleman@ropesgray.com
Andrew J. O'Connor (admitted *pro hac vice*)
andrew.oconnor@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050

Brian Lebow (admitted *pro hac vice*)
brian.lebow@ropesgray.com
Samantha Gagnon (admitted *pro hac vice*)
samantha.gagnon@ropesgray.com
Heesoo Park (admitted *pro hac vice*)
heesoo.park@ropesgray.com
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2023, this document was filed electronically and is available for viewing and downloading from the Court's CM/ECF system, and that all parties will receive notice through the CM/ECF system.

*/s/ Dennis Coleman*
Dennis Coleman
*Counsel for Plaintiffs*
