**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| M.M.C., ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILDREN, A.T.C. AND M.C.C. AND N.A.B., ON HIS OWN BEHALF AND ON BEHALF OF HIS MINOR CHILD, N.A.C.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Defendant. | Case No. 1:23-cv-00158 |

**MOTION TO APPROVE MINOR SETTLEMENT**

Plaintiffs N.A.C., a minor, and N.A.B. (on behalf of himself and his minor child N.A.C.) and Plaintiffs M.C.C., and A.T.C., both minors, and M.M.C. (on behalf of herself and her minor children M.C.C. and A.T.C.) (collectively, the "Plaintiffs"), hereby submit this Motion to Approve Minor Settlement (the "Motion") in the above-captioned matter involving minor children pursuant to LR Cv. 39.4(a).  Defendant has consented to this motion.

**I.　　FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs brought the above-captioned case on April 13, 2023 under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) *et seq* (the "FTCA"), alleging Texas state law claims for intentional infliction of emotional distress, abuse of process, gross negligence, negligence, and abduction of child on account of Defendant's mistreatment of the Plaintiffs.  Specifically, Plaintiffs allege that the Defendant forcibly separated N.A.B. from his son N.A.C. for 45 days and separated M.M.C. from her daughter M.C.C. for 52 days.  Compl. Dkt. 1 ¶¶ 2-4; English Translation of the Declaration of N.A.B. in Support of Joint Motion to Approve Settlement on Behalf of Minors ("N.A.B. Decl."); English Translation of the Declaration of M.M.C. in Support of Joint Motion to

Approve Settlement on Behalf of Minors ("M.M.C. Decl."). Plaintiff M.M.C. further alleges that her treatment during that period of separation and while in the early stages of pregnancy with her daughter A.T.C. led to nutritional deficiencies and developmental delays for her daughter A.T.C. Compl., Dkt. 1 ¶ 121; M.M.C. Decl. ¶¶ 15-17. This separation and mistreatment deprived the Plaintiffs of their constitutional rights and caused injury to the Plaintiffs while in the Defendant's custody. Indeed, the harm to N.A.C. and M.C.C. from the separation and the harm to A.T.C. from the mistreatment her mother suffered has negatively affected them to this day and will continue to do so for years to come.

On August 21, 2023, Defendant filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (the "Motion to Dismiss") and the related briefing concluded on November 14, 2023. Dkt. Nos. 12, 17, 19, 21. On December 7, 2023, prior to a hearing on the Motion to Dismiss, the Court ordered this case stayed to allow the Parties to continue ongoing settlement negotiations. Dkt. No. 22. The Parties have since diligently worked towards a consensual resolution of the dispute and have reached an agreement on the terms of settlement agreement, which include a payment of more than $10,000 for N.A.C., M.C.C., and A.T.C. (the "Minor Plaintiffs").

## II. PLAINTIFFS' MOTION TO APPROVE MINOR SETTLEMENT SHOULD BE APPROVED UNDER LR CV 39.4

Under Rhode Island law, a release of minors' claims with damages in excess of $10,000 must be approved by a court and signed by a Court-approved guardian. *See* R.I. Gen. Law § 33-15.1-1; *see also Gray v. Derderian*, No. CIV.A. 03-483L, 2009 WL 1813133, at *2 (D.R.I. June 24, 2009). Local Rule Applicable to Civil Proceedings 39.4 governs the procedure for this Court's approval of such release of minor's claims. Plaintiffs respectfully request that the Court approve (i) the Plaintiff parents—the legal guardians of the minor Plaintiffs—as approved guardians for

the purpose of R.I. Gen. Law § 33-15.1-1 and LR Cv 39.4; (ii) the minor settlements as described in the Stipulations; and (iii) authorize the Plaintiff parents to execute all necessary instruments, including but not limited to the Stipulations and the trust documents on behalf of N.A.C., M.C.C., and A.T.C.

As required by LR Cv 39.4(a)(1), both Plaintiff parents have submitted declarations in support of the motion to approve minor settlement. M.M.C. Decl.; N.A.B. Decl.

As required by LR Cv 39.4(a)(2)-(3), Plaintiffs submit a copy of each settlement agreement, specifically (1) the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2677 between Defendant and N.A.B., on his own behalf and on behalf of his minor son N.A.C. (the "N.A.B. Stipulation") and (2) the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2677 between Defendant and M.M.C., on her own behalf and on behalf of her minor daughters M.C.C. and A.T.C. (the "M.M.C. Stipulation") (together, the "Stipulations"). Exs. 1-2; Thornton Decl. ¶¶ 7-8.

As required by LR Cv 39.4(a)(5), copies of the relevant trust documents are attached, including (i) the Legacy Enhancement Minors Master Pooled Trust Agreement (Ex. 3);[1] (ii) the template for the Legacy Enhancement Minors Masters Pooled Trust Joinder Agreement to create N.A.B.'s and M.C.C.'s trust sub-accounts (Ex. 4); (iii) the Legacy Enhancement Master Pooled Trust Agreement, which creates a Special Needs Trust (Ex. 5); (iv) the template for the Legacy Enhancement Masters Pooled Trust Joinder Agreement to create A.T.C.'s special needs trust sub-account (Ex. 6). *See* Thornton Decl. ¶¶ 9-13.

---

[1] As described in more detail below, *supra* Section II.C, Legacy Enhancements is a non-profit organization that specializes in establishing trusts for minors.

### A.      Descriptions of the Injuries Suffered (LR Cv 39.4(a)(6))

Defendant's separation and mistreatment of Plaintiffs has had a profound negative effect on the Minor Plaintiffs. The trauma of the Defendant's forcible separation of N.A.C. and M.C.C. from their respective parents and the prolonged duration of their separation has had a lasting and harmful impact on their demeanor and development. Likewise, the Defendant's treatment and care of M.M.C. has stunted A.T.C.'s development.

Before federal agents dragged N.A.C. away from his father, Compl. Dkt. 1 ¶ 4, the two were very close. N.A.B. Decl. ¶ 7. Now, N.A.C. has trouble trusting his father. N.A.B. Decl. ¶ 8. While time has allowed their relationship to begin to heal, they are not as close, and N.A.C. has never spoken with his father about what happened during their separation. N.A.B. Decl. ¶¶ 7, 10. N.A.C. has anxiety, particularly when he sees police officers or when he hears sirens, as these remind him of his time at the border and when he was separated from his father. N.A.B. Decl. ¶¶ 8-9. Because N.A.C. cannot sleep alone, N.A.C. and N.A.B. share a bedroom, sleeping in different beds. N.A.B. Decl. ¶ 8. Though he was a calm child before their separation, N.A.C. now has problems acting out in school to the extent that his school referred him to a child psychologist. N.A.B. Decl. ¶¶ 8-9. While N.A.B. hopes that his son will continue to heal, he fears that his son will struggle with the effects of the separation for the rest of his life. N.A.B. Decl. ¶ 11.

Before she was forcibly separated from her mother at six years old, Compl. Dkt. 1 ¶ 2, M.C.C was an outgoing child who loved to sing and dance. M.M.C. Decl. ¶ 8. Yet after being separated and eventually reunited with her mother, M.C.C. is no longer the outgoing child her mother remembers. *Id.* Instead, M.C.C. is shy and wary of strangers and has developed extreme separation anxiety, adversely affecting her social skills and language capabilities. M.M.C. Decl. ¶¶ 7, 8, 10. M.C.C.'s separation anxiety caused her to believe that her mother had abandoned her when her mother had to go to the hospital to deliver M.C.C.'s sister, A.T.C. M.M.C. Decl. ¶ 7.

For some time after the separation, M.C.C. would only speak in short one-word responses, rather than the full sentences she used to speak. M.M.C. Decl. ¶ 10. While her anxiety has eased somewhat, she experiences episodes when she remembers what happened at the border or when she fears her mother may not return. M.M.C. Decl. ¶¶ 7, 11. M.C.C. also struggles in school, and at 12 years old has not been able to learn how to read or write in English or in Spanish. M.M.C. Decl. ¶¶ 1, 10. Additionally, after the separation, M.C.C. became very picky about what food she eats. M.M.C. Decl. ¶ 9. Because M.C.C. will only eat certain foods—including no meat or vegetables—her physical development is not as strong or robust as it should be. *Id.*

During her detention, M.M.C. received insufficient food and only had access to non-potable water. M.M.C. Decl. ¶ 14. Even though M.M.C. was four weeks pregnant with her daughter A.T.C. during her detention and separation, M.M.C. only received one tablet of prenatal vitamins. M.M.C. Decl. ¶ 14. M.M.C.'s malnourishment and lack of prenatal care had a severe impact on her daughter A.T.C., including long-term developmental delays for A.T.C. M.M.C. Decl. ¶¶ 13-18. Specifically, A.T.C. was born with a vitamin D deficiency. M.M.C. Decl. ¶ 15. Consequently, A.T.C. takes medication daily, including an intramuscular injection of Hydroxycobalamin once per day and Cystadane, a powder that is mixed into juice, twice per day. *Id.* A.T.C. struggles with taking her medication, and sometimes M.M.C. needs help from other adults to ensure that she can safely administer the injections to A.T.C. *Id.* While the medicines help A.T.C., she still exhibits several developmental delays. M.M.C. Decl. ¶¶ 16-17. A.T.C. acts like a baby, demanding that she receive a bottle and speaking like a baby. M.M.C. Decl. ¶ 17.

As described above, each minor Plaintiff struggles with the effects of Defendant's separation and mistreatment of the Plaintiffs. Plaintiff parents N.A.B. and M.M.C. believe that their children will continue to experience the effects of this trauma for their entire lives.

### B. Settlement Agreements and Terms of Payment (LR Cv 39.4(a)(2)-(3))

Per the Stipulations, Defendant will send the settlement funds to the Ropes & Gray IOLTA Account, and subsequently Ropes & Gray will distribute the funds to the Plaintiffs. Ex. 1 at ¶ 3(a); Ex. 2 at ¶ 3(a); Thornton Decl. ¶ 5. Counsel for the Plaintiffs were engaged on a pro bono basis and will collect no fees for the work performed or expenses incurred. Thornton Decl. ¶ 4.

Under the terms of the N.A.B. Stipulation, Defendant has agreed to pay Plaintiffs N.A.B. and N.A.C. $270,000.00. Ex 1 at ¶ 3. In exchange, Plaintiffs N.A.B. and N.A.C. will release any and all claims arising out of the alleged incidents against the Defendant. *Id.* ¶ 4. This money will be split equally between N.A.B. and his son, so that N.A.C. will receive $135,000.00. N.A.B. Decl. ¶ 16; Thornton Decl. ¶ 5. Ropes & Gray will send N.A.C.'s funds to a trust sub-account solely for N.A.C.'s benefit, which is part of Legacy Enhancements Minors' Master Pooled Trust ("Minors' Trust"). Thornton Decl. ¶ 5; *see* Ex. 4.

Under the terms of the M.M.C. Stipulation with Plaintiffs M.M.C., M.C.C., and A.T.C., Defendant has agreed to pay a total of $305,000.00.[2] Ex. 2 at ¶ 3. In exchange, Plaintiffs M.M.C., M.C.C., and A.T.C. will release any and all claims arising out of the alleged incidents against the Defendant. *Id.* ¶ 4. M.M.C. and M.C.C. will each receive $135,000.00 and A.T.C. will receive $35,000.00. M.M.C. Decl. ¶ 25; Thornton Decl. ¶ 5. Ropes & Gray will send M.C.C.'s funds to a trust sub-account solely for M.C.C.'s benefit, which is part of Legacy Enhancements Minors' Trust. Thornton Decl. ¶ 5; *see* Ex. 4. Ropes & Gray will send A.T.C.'s funds to a trust sub-account

---

[2] Defendant contends that A.T.C. did not file an administrative claim, *see* Dkt. 12 at 34-35; Dkt. 19 at 16-18, and has not agreed to any allocation of settlement funds to A.T.C. Defendant proposed that M.C.C. receive $135,000.00 and that M.M.C. receive $170,000.000. In turn, M.M.C. has agreed to allocate $35,000.00 to A.T.C. to ensure the funds are used in A.T.C.'s best interest. M.M.C. Decl. ¶ 25.

solely for A.T.C.'s benefit, which is part of Legacy Enhancements Minors' Master Pooled Special Needs Trust ("Special Needs Trust").  Thornton Decl. ¶ 5; *see* Ex. 6.

### C. Explanation of Safeguards and Protection of the Settlement Funds (LR Cv 39.4(a)(4)-(5))

As described above, Ropes and Gray will send the Minor Plaintiffs' funds to Legacy Enhancement trusts for management.  Legacy Enhancement is a non-profit organization that specializes in establishing trusts for minors, including those living with disabilities and special needs.  Thornton Decl. ¶ 6; Ex. 7.  Legacy Enhancements relies professional money managers to invest the pooled trusts that it manages.[3]  Ex. 7.  The Board of Trustees in partnership with a professional fund manager oversees the investments to ensure funds are invested conservatively. *Id.* Other courts have approved settlements for minor plaintiffs with FTCA claims against the United States, including in cases involving separation and mistreatment at the border.  *See F.R. v. United Sates*¸ No. 2:21-cv-00339-DLR, Dkt. No. 94 (D. Ariz. 2021); Thornton Decl. ¶ 6.

To create a sub-account with Legacy Enhancements, the Minor Plaintiffs must pay a one-time fee of $1,500.00.  N.A.B. Decl. ¶ 19; M.M.C. Decl. ¶ 28; Ex. 4 at 9; Ex. 7 at 16.  Additionally, Legacy Enhancements charges an annual administration fee of 1.95%.  N.A.B. Decl. ¶ 19; M.M.C. Decl. ¶ 28; Ex. 4 at 9; Ex. 6 at 16. Each of the minor Plaintiff's funds will be placed into a managed sub-account, in which the assets from all sub-accounts are "pooled" together and invested and managed by professional money managers.  N.A.B. Decl. ¶ 18; M.M.C. Decl. ¶ 27; Ex. 7.  Plaintiffs expect that the return on investment will cover the administration fees.  N.A.B. Decl. ¶ 19; M.M.C. Decl. ¶ 28.

---

[3] The beneficiary of a trust has a separate account, but for the purposes of investment and fund management, the separate accounts are pooled together.  Ex. 7.

By depositing the funds for the Minor Plaintiffs in trust sub-accounts at Legacy Enhancements, the Minor Plaintiffs' funds will be safeguarded for their benefit. In the Minors' Trust sub-accounts for N.A.C. and M.C.C., the funds will be held for the minors' benefit in a pooled trust overseen by a fiduciary trustee at Legacy Enhancement until the minor reaches a specified age of 18. *See* Ex. 3 Art. VII, § 3, Ex. 4 Art. 3 (stating that final distribution occurs when the beneficiary reaches the age of majority); *see also* R.I. Gen. Law § 15-12-1 (age of majority is 18 in Rhode Island); MD Gen Provis. § 1-401 (age of majority is 18 in Maryland). After 18, N.A.C. and M.C.C. will gain full access to the funds in their respective account. *See* Ex. 3 Art. VII, Ex. 4 Art. 3; R.I. Gen. Law § 15-12-1; M.D. Gen Provis. § 1-401. *See also* N.A.B. Decl. ¶ 22; M.M.C. Decl. ¶ 31. In the Special Needs Trust sub-account, funds will be held for the duration of A.T.C.'s life unless Legacy Enhancements determines that the termination of the sub-account is in her best interest because, for example, she is no longer disabled. *See* Ex 6 at Art. 7 & First Amendment. Plaintiff parents may apply to use funds in the Minor Plaintiffs' trust sub-accounts for the benefit of the Minor Plaintiffs for specified purposes including education or medical needs, and such applications will be reviewed by Legacy Enhancement. *E.g.*, N.A.B. Decl. ¶ 21; M.M.C. Decl. ¶ 30; Ex. 8 (Allowable & Restricted Purchases for Minor Trust Accounts); Ex. 9 (Allowable & Restricted Purchases for Minor Special Needs Trust Accounts). If a parent applies to access the funds for any restricted expenses, Legacy Enhancement will not permit the parent to access the funds. N.A.B. Decl. ¶ 21; M.M.C. Decl. ¶ 30; Exs. 8-9; Ex. 4 at Art. 2; Ex. 6 at Art. 2.

If the Plaintiff families are unable to obtain asylum and are forced to relocate outside of the United States, Legacy Enhancements provides the option to continue their services or to provide Foreign Disbursement Accounts which would allow them to send approved funds needed

by the minor via debit card for use outside the United States.  N.A.B. Decl. ¶ 20; M.M.C. Decl. ¶ 29; Thornton Decl. ¶ 6.

### D. Best Interest of the Minors and Terms of Settlement (LR Cv 39.4(a)(1))

Both Plaintiff parents explain in their declarations that the proposed settlement is in the best interest of the minors because the settlement allows consensual resolution of their claims and provides them with monetary recovery to redress their injuries while avoiding the delay and risks of a trial.  N.A.B. Decl. ¶¶ 13-14; M.M.C. Decl. ¶¶ 21-23.  Requiring minors N.A.C. and M.C.C. to testify about these traumatic experiences will impose extreme hardship, especially because at least some of the Minor Plaintiffs have trouble discussing their experiences with those closest to them.  N.A.B. Decl. ¶¶ 13-14; M.M.C. Decl. ¶ 21.  Such mental and emotional strain risks exacerbating the harm N.A.C. and M.C.C. already experience.  Moreover, given the mental and emotional nature of the harm N.A.C. and M.C.C. experience, proving a sum certain of damages through litigation would pose some difficulties.  *See Limone v. United States*, 579 F.3d 79, 103 (1st Cir. 2009) (discussing "the difficulty of placing a particular dollar value on emotional injuries").  Instead, receiving settlement at this stage will help Minor Plaintiffs move on from these experiences, equipped with the resources to obtain aid and support, including from medical professionals.

In light of the similarly situated cases described above and the facts of this case, the settlement amounts of $135,000 for M.C.C. and N.A.C. are fair and reasonable, supporting that the Stipulations are in the best interest of the minors.  The recovery amounts here are similar to those in FTCA cases for similarly situated plaintiffs.  In *R.Y.M.R. v. United States*, No. 1:20-cv-23598 (S.D. Fla. 2020), the United States similarly forcibly separated father and child for approximately 75 days.  Plaintiffs brought claims under the Federal Tort Claims Act alleging battery, assault, negligence, and intentional infliction of emotional distress arising from

mistreatment while in U.S. custody. After all claims survived motion to dismiss, the parties settled for a total of $315,000, of which 30% was provided to the minor child (approximately $93,852 after deducting attorney's fees). *See R.Y.M.R. v. United States*, No. 1:20-cv-23598, Dkt. No. 135 (S.D. Fla. 2020). Similarly, in *F.R. v. United Sates¸* No. 2:21-cv-00339-DLR (D. Ariz. 2021), plaintiffs brought claims under the FTCA for intentional infliction of emotional distress, negligence, and loss of child's consortium again based on the United States' forcible separation and mistreatment of parent and child for approximately 90 days. After all of the claims survived motion to dismiss, both parties settled for a total of $110,000, of which $65,000 was to be distributed to the minor child. *See F.R.¸* No. 2:21-cv-00339-DLR, Dkt. No. 94.

Minor Plaintiff A.T.C. was unborn during the alleged incidents, and the Government's Motion to Dismiss contends that she failed to submit a timely administrative claim. While Plaintiffs are confident that her claims are valid, the reduced settlement amount of $35,000 for A.T.C (to be provided through her mother M.M.C), is fair and reasonable given the risk of proceeding with litigation and the uncertainty of proving that the harm to M.M.C. while she was detained caused the harm to A.T.C. *See Clifford v. Raimondo*, 184 A.3d 673, 692 (R.I. 2018) (explaining, in the class action context, that factors in determining whether to approve settlements include "the risks of establishing liability" and "the risks of establishing damages" as well as "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation").

### III.   CONCLUSION

Plaintiffs respectfully request that the Court enter an order approving the minor settlement in the above-captioned case pursuant to the Plaintiff Stipulations and further authorizing Plaintiff parents to execute all necessary instruments as legal guardians of the Minor Plaintiffs, including but not limited to the Stipulations and the trust documents on behalf of N.A.C., M.C.C. and A.T.C.

Dated: August 7, 2024                          Respectfully submitted,

*/s/ Kathryn Thornton*
Kathryn C. Thornton (admitted *pro hac vice*)
kathryn.thornton@ropesgray.com
Natalia Mercado Violand (*pro hac vice* pending)
natalia.mercadovioland@ropesgray.com
Nicholas Curry (admitted *pro hac vice*)
nick.curry@ropesgray.com
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC  20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650

*/s/ Dennis Coleman*
Dennis Coleman (RI Bar 2310)
dennis.coleman@ropesgray.com
Andrew J. O'Connor (admitted *pro hac vice*)
andrew.oconnor@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050

Brian Lebow (admitted *pro hac vice*)
brian.lebow@ropesgray.com
Samantha Gagnon (admitted *pro hac vice*)
samantha.gagnon@ropesgray.com
Heesoo Park (admitted *pro hac vice*)
heesoo.park@ropesgray.com
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Plaintiffs*